## MALLORY S. S. CO. v. THALHEIM et al.

(Circuit Court of Appeals, Second Circuit. Decided October 13, 1921. Opinion Filed November 16, 1921.)

No. 155.

1. **Interpleader ⬤⇒18—Right to relief held barred by laches, where action at law had been pending for a long time.**

   A steamship company, which delivered goods covered by an order bill of lading to a party not having the bill, and was sued by the holder for conversion, *held* barred by laches from obtaining injunctive relief, and relief by way of interpleader, where, though it knew the facts when it filed its answer at law, it did not seek such relief until the case, after having been pending for over a year, had appeared more than· a dozen times on the day calendar, and could have been immediately tried, and after the plaintiff therein had thoroughly prepared his case for trial at ·great expense.

2. **Interpleader ⬤⇒10—Not maintainable by carrier intentionally delivering goods to party not having bills of lading.**

   A steamship company, which intentionally delivered goods covered by order bills of lading to one not having the bills of lading, is not entitled to maintain a bill of interpleader against the holders of the bills, who are suing or threaten to sue for conversion, since such a bill cannot be sustained, where the complainant is a wrongdoer as to any of the defendants, or where there is a question to be tried as to whether complainant, by reason of his own act, has rendered himself liable to each of the defendants.

3. **Interpleader ⬤⇒1—When maintainable stated.**

   The right of a court of equity to compel an interpleader exists where two or more persons claim the same thing under different titles, or in separate interests, from another person, who does not claim any title or interest in himself, and, not knowing to which of the claimants he ought to deliver that which he has in his custody, is either molested by an action or actions brought against him, or fears he may suffer injury from the conflicting claims of the parties.

4. **Interpleader ⬤⇒6—Not maintainable by party not in possession of property or fund in dispute.**

   A bill of interpleader ordinarily assumes that the person filing it is in the position of a stakeholder, and has the property actually in his possession which is severally claimed by two or more persons, and it cannot be maintained by one who is not in possession of the property or fund in dispute.

5. **Interpleader ⬤⇒6—Not maintainable by carrier after delivery of goods.**

   Bill of Lading Act Aug. 29, 1916, §§ 17, 18 (Comp. St. §§ 8604i, 8604ii), authorizing a carrier to require all known claimants of goods to interplead where more than one person claims title to the goods, does not authorize a carrier who has parted with possession of goods to compel the claimants to interplead and determine to which one of them he should have made delivery.

6. **Injunction ⬤⇒26(4)—Carrier delivering to one not having bills of lading not entitled to sue holders to prevent multiplicity of suits.**

   Where a steamship company delivered goods covered by various bills · of lading negotiated by the shipper to different persons to one not having the bills of lading, and the holders of the bills, who have no unity of claim, title, right, or cause of action with each other, are suing or threatening to sue for conversion, the steamship company cannot maintain a suit to prevent a multiplicity of actions by having a complete determination in

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one suit, as a mere community in interest in matters of law or fact does not authorize a bill to avoid multiplicity of actions.

**7. Injunction ⟷26(4)—Suit held not maintainable against holders of bills of lading covering goods wrongfully delivered to prevent multiplicity of suits.**

Where a steamship company delivered goods covered by order bills of lading to B. & Co., which did not have the bills of lading, and the several holders of the bills are suing or threatening to sue for conversion, the fact that B. & Co. may in a certain contingency sue the holders of the bills of lading, or that the shipper's trustee in bankruptcy may find it necessary to have an accounting with B. & Co., does not authorize a suit by the steamship company to avoid a multiplicity of suits.

**8. Injunction ⟷26(4)—Multiplicity of suits to which complainant will not be party does not confer equity jurisdiction.**

The multiplicity of suits which confers jurisdiction in equity is a multiplicity of suits to which the complainant will be a party, and a multiplicity of suits against the defendants, to which the complainant will not be subjected, affords no ground for coming into equity.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Mallory Steamship Company against Julius Thalheim and others, trustees doing business as the International Credit Trust, and others. From an order denying an injunction pendente lite, petitioner appeals. Affirmed.

The petitioner is a corporation organized under the laws of the state of Maine, but has an office for the transaction of business in the city and Southern district of New York. It is a common carrier. None of the respondents are citizens of Maine and the controversy is one between citizens of different states. The petitioner seeks an injunction to restrain the prosecution of four actions at law, brought against it for conversion and pending in the District Court, and also asks for interpleader. The motion for an injunction was denied by the District Judge, who also refused to require an interpleader.

Jerome S. Dumont and George Mogensen are copartners trading under the name of George Mogensen, and are exporters engaged in business in the city of New York. In December, 1919, they delivered to the steamship Henry R. Mallory, owned and operated by the petitioner, merchandise of the value of $350,000. The steamship company issued to George Mogensen negotiable order bills of lading for said merchandise. The bills of lading provided that the merchandise covered thereby was to be delivered "to the order of George Mogensen, notify Leo Brill & Co."—Leo Brill & Co., being a firm in Bucharest, Roumania.

Mogensen thereupon, in the usual course of business and for value, duly negotiated, indorsed over, and delivered these bills of lading to the respondents herein. Bank of Dunellen, Berkowitz, Goldsmith & Spiegel, Emanuel Gross, and the International Credit Trust. Upon the arrival of the vessel at Constanza, the petitioner, through its local agent there, delivered this entire cargo to Leo Brill & Co. notwithstanding that the firm had none of the bills of lading; the bills of lading being then, as now, in the possession of the respondents herein, either as absolute owners through outright purchase, as they claim, or, as having advanced and paid to Mogensen large sums of money thereon. It seems that this cargo was so delivered to Leo Brill & Co., not through inadvertent error or mistake on the part of the petitioner's local agent at Constanza, but deliberately, on the strength of and because of certain indemnity which that firm then and there furnished to the petitioner, in the shape of a bond executed by the Marmorosch Blank Bank, of Roumania, as the condition of the delivery of the cargo to it.

The petitioner now comes into a court of equity and prays for its extraordinary aid in restraining the several holders of these various bills of lading from prosecuting their several suits against it, at law and in admiralty, three of them pending in this jurisdiction, and one in Maine, to recover of the petitioner herein their several damages as for the separate conversions by the petitioner of the respective lots of merchandise covered by the respective bills of lading, when it delivered the merchandise to Leo Brill & Co., in Roumania, without the production of any of the bills of lading, and without paying any of the drafts attached thereto for an aggregate of several hundred thousand dollars. The basis for this suit is, the petitioner alleges, "equitable interpleader," because, although Brill & Co. already has the cargo, and has had it since January, 1920, Brill & Co. now make claim to the damages for which the Mallory Steamship Company is being sued; i. e., the money value of the cargo, which the petitioner fears that it may ultimately have to pay to these various holders of the bills of lading in the law and admiralty suits, and that the trustee in bankruptcy of Mogensen likewise claims or may claim, either indirectly from or through the petitioner, or from the respondents herein, to the extent of the difference between what they paid for or advanced on the bills of lading, and the amount of their respective verdicts—i. e., the full value of the cargo, that being the measure of damages, in an action at law for conversion. So that, these six claimants, four being already ad litem, and the two others threatening, constitute, so the petitioner avers, the "multiplicity of suits" which it fears, and to restrain which, it argues, a court of equity ought, in the exercise of its sound discretion to give its redress by bringing them all into one suit. It is noted that the petitioner does not offer to turn over to the plaintiffs in the law and admiralty suits the indemnity which it received from the Marmorosch Blank Bank, and which was accepted by the petitioner in lieu of the cargo, and probably for the full value thereof.

The respondent Thalheim, as assignee of the International Credit Trust, began an action at law on August 4, 1920, against the petitioner claiming $100,000 as the alleged value of certain merchandise on account of which advances had been made on the security of certain of the bills of lading which had been delivered by the firm of George Mogensen and assigned by it to the International Credit Trust, and which were by the said Trust assigned to Thalheim. That action is brought to recover for the conversion by petitioner of the merchandise by its unlawful delivery of the same at Constanza. A like action was commenced on the same date by the respondent Mitchell, as assignee of some of the bills of lading similarly issued by the firm of George Mogensen, and because of which it is claimed title passed to certain of the merchandise which it is alleged was similarly misdelivered; damages being asked in the sum of $105,000. A libel was filed on January 10, 1920, in the same District Court, by the respondents Berkowitz and Spiegel, holders of certain of the assigned bills of lading claiming damages in the sum of $91,813.82, for conversion of the merchandise, represented by said bills, because of its misdelivery. The First National Bank of the Borough of Dunellen, N. J., on September 2, 1920, brought an action at law against the petitioner in the United States District Court for the District of Maine, alleging conversion and claiming damages in the sum of $150,000.

All the aforesaid actions are alleged to be pending and undetermined, and the actions brought by Thalheim and Mitchell are alleged to be upon the day calendar of the court. The petition contains the following further allegations:

"Thirtieth. Your petitioner has no assurance of the solvency of said firm of Leo Brill & Co. or the ability of said firm to respond over to your petitioner for any judgment or decree that may be recovered against it in the aforesaid proceedings. The members of said firm, being residents of Roumania, are not within the jurisdiction of this court, or other court in the United States, and your petitioner may be subjected to the risks and difficulties of litigation in Roumania or other foreign countries. The value of Roumanian currency in exchange with the currency of the United States

has fallen far below parity and is at the present time less than one-fifteenth of parity.

"Thirty-first. Your petitioner is further advised and believes that if it is compelled to pay in any of said actions to the plaintiff or libelant therein the full amount of the value of such goods, wares, and merchandise as were represented by the bills of lading so transferred, and your petitioner in turn recovers from said Leo Brill & Co. by action against said firm, then Leo Brill & Co. intend to prosecute a claim against the plaintiff or libelant so recovering the sum paid under such judgment for the total amount thereof, or for such part thereof as represents the excess of the sum so paid over and above the amount of the advance made by the purchaser of the draft or drafts involved in such action advanced at the time of the purchase of said draft by such purchaser to George Mogensen.

"Thirty-second. Your petitioner is further advised and believes that if it be established, as claimed by said firm of Leo Brill & Co., that title to said goods, wares and merchandise did pass to said firm of Leo Brill & Co., as hereinabove set forth, said firm of Leo Brill & Co., will be entitled to recover such excess from such plaintiff or libelant, as the case may be.

"Thirty-third. By reason of the foregoing facts your petitioner is advised and believes that, unless a court of equity shall intervene to avoid such multiplicity of actions and such circuity of actions, your petitioner will be greatly and unduly harassed and put to heavy expense and trouble to protect its rights and to prevent a miscarriage of justice.

"Thirty-Fourth. Your petitioner is further informed and believes that said Thomas E. Huser, trustee in bankruptcy as aforesaid, makes claim that at the time that said sum of $200,000 was paid by said firm of Leo Bril & Co. to said firm of George Mogensen, such payment purporting to have been made on account of the contract of July 22, 1919, there existed an indebtedness from said firm of Leo Brill & Co. to said firm of George Mogensen, to the payment of which said sum of $200,000 or a substantial part thereof, was properly applicable; so that only a part, if any, of the sum so paid can justly be claimed by said firm of Leo Brill & Co. to have been actually made on account of said contract and of the purchase of the goods, wares and merchandise contained in the cases so shipped, as hereinabove set forth, by said steamer Henry R. Mallory; and your petitioner is further informed and believes that to determine the truth with regard to said claim of said trustee in bankruptcy and to determine the state of said account between said firm of Leo Brill & Co. and said firm of George Mogensen at the time when said payment was so made will require the analysis of a series of transactions, and the accounts relating thereto, between said two firms, which determination can be properly made only by a court of equity; and your petitioner is further advised and believes that it is essential and necessary that the state of account between said firms shall be duly determined in order that its liability, if any, shall be limited to the amount justly and equitably due to the plaintiff or libelant, as the case may be, in each of said litigations hereinabove fully set forth."

While the petition asked that the several respondents named therein be required to interplead, and that a preliminary injunction be entered restraining the parties in the several actions above referred to from proceeding further with the actions at law and with the libel in admiralty, the order which the court entered, and from which the appeal is taken, was confined to two of the actions, and reads as follows: "Ordered that said motion for an injunction pendente lite restraining the prosecution of the action of Julius Thalheim, plaintiff, against Mallory Steamship Company, and the action of Samuel Mitchell, plaintiff, against Mallory Steamship Company, defendant, be and the same hereby is, in all respects denied."

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and Carl G. Stearns, both of New York City, of counsel), for appellant.

Leo Oppenheimer, of New York City (S. H. Kaufman and P. Kupfer, of New York City, of counsel), for respondent Thalheim.

Jacob M. Leibner, of New York City (Samuel I. Frankenstein, of New York City, of counsel), for respondent Mitchell.

Before ROGERS, MANTON, and MACK, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). There are conclusive reasons why the application of the Mallory Steamship Company, the appellant herein, for injunctive relief and interpleader was properly denied.

[1] In the first place, it is to be observed that the appellant was dilatory in making his application. The maxim is ancient, "Vigilantibus non dormientibus æquitas subvenit, and its meaning sufficiently obvious. The courts of equity have applied it in many cases, in which the right to equitable relief has been otherwise clear, simply because a party has slept upon his rights. As Lord Camden declared in Smith v. Clay, 5 Bro. C. C. 639:

"Nothing can call forth this court [chancery] into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing."

Now, what are the circumstances under which the appellant seeks the stay of the proceedings at law? An action for conversion was commenced on August 4, 1920, by the respondent Thalheim as assignee of the International Credit Trust against the Mallory Steamship Company, defendant, the petitioner and appellant herein. The steamship company filed its answer on September 9, 1920, in which it merely denied all the material allegations of the complaint and set up no affirmative defenses, legal or equitable, despite the fact that at that time all of the material allegations of the present petition were known to it. Issue in that action was joined on September 20, 1920. After the joinder of issue in that action its attorneys notified the attorney for Thalheim that at the trial of the action strict proof of all the allegations of the complaint would be required, including, not only proof of the misdelivery of said merchandise, but of all the facts necessary to show the contents, packing, and shipping of the great number of cases delivered to the steamship company and for which it issued its bills of lading.

In preparing the action for trial it was necessary for counsel for Thalheim to visit various states, to take depositions of witnesses familiar with the facts connected with the packing and shipment of some of the cases to George Mogensen which were subsequently delivered to the steamship company. The law action first appeared on the day calendar for trial during the month of April, 1921, and was adjourned at the request of the defendant until May. During the month of May, it again appeared on the day calendar, and was marked ready for trial, and held by the court until June, 1921. During the month of June, when the case again appeared on the day calendar, it was again marked ready, but at the suggestion of the judge who was presiding the case was passed until September. The action again appeared on the calendar for trial on September 12, 1921. At the request of the defendant it was arranged that the case should be held ready, so that the trial should not begin before September 15, 1921. The case was marked

ready by both sides on September 15th, again on September 16th, and again on September 19th. On the morning of September 19th, when the calendar was clear and the case could have immediately proceeded to trial, counsel for the complainant stated to the court that it was about to serve a bill in equity to bring in various alleged claimants, and as incident thereto would apply for a temporary injunction staying the trial of the law action. The judge thereupon directed that the case hold its position on the calendar and passed it until September 21st. A similar disposition of the case was made on September 22d. On September 23d, an application was made to the District Court for an order staying the trial of the law action upon an unserved petition, which constitutes the moving paper herein.

It thus appears that the allegations of the bill in equity were as well known to the appellant on the date when the answer was served as they are to-day, and, though they could have been asserted by way of equitable defense, the appellant contented itself with a general denial. Now, after the law case had appeared more than a dozen times on the day calendar, and could have been immediately tried, and after the respondent Thalheim had thoroughly prepared his case for trial at great expense, the appellant sought to stay his action.

The petitioner seeks to excuse this laches in not bringing the alleged facts constituting the equitable defense to the attention of the court sooner on the ground that Leo Brill & Co. is a Roumanian partnership, and that it has refused to submit itself to the jurisdiction of this court hitherto. It is significant that the guaranty received by the complainant herein was not executed by Leo Brill & Co. It was executed by the Banque Marmorosch Blank & Co., which has large offices at No. 29 Broadway in this city, and has a managing agent on whom the process of this court could have been served. It maintains large bank accounts in this city, and jurisdiction could have been acquired by attachment had the appellant seen fit to do so.

It seems to us that the application to stay the action at law comes too late, after a party with full knowledge of all the facts has allowed the suit to go to issue and to be ready for trial, and then comes at the last moment to stay the action to prevent a multiplicity of suits. Richardson v. Davidson, 53 Hun, 630, 5 N. Y. Supp. 617. What has been said would be true, if the appellant originally had grounds for equitable relief. But it is our opinion that upon the facts as they are disclosed by the record no reason has existed at any time for its coming into equity for the relief for which it is seeking. The relief sought is that of requiring the respondents to interplead, and thus relieve the appellant of the danger it is thought to be in from the claims which they assert. But the appellant's position is quite untenable.

[2] Where it appears that as to any of the defendants the complainant is a wrongdoer, his bill of interpleader cannot be sustained. Slingsby v. Boulton, 1 Ves. & B. 334; Morristown First National Bank v. Bininger, 26 N. J. Eq. 345; Hatfield v. McWhorter, 40 Ga. 269; Conley v. Alabama Gold & C. Ins. Co., 67 Ala. 472. It is apparent that the condition in which the steamship company finds itself is of its own intentional creating in that the merchandise for which it had

issued order bills of lading was delivered by it to one who, as it knew, did not have the bills of lading, and this misdelivery of the goods made the petitioner an intentional wrongdoer as to the holders of the bills, the respondents whom it now seeks to compel to interplead. This it cannot do.

A complainant cannot have an order that defendants interplead, when one important question to be tried is whether by reason of his own act he has rendered himself liable to each of them. Desborough v. Harris, 5 DeG., M. & G. 439; Cochrance v. O'Brien, 8 Ir. Eq. 241; National Life Insurance Co. v. Pingrey, 141 Mass. 411, 6 N. E. 93. And in the actions pending the act complained of is the alleged conversion of the goods by the steamship company, through its intentional misdelivery of them, thereby incurring liability to the defendants herein as holders of the bills of lading.

[3] A bill of interpleader ordinarily supposes that the plaintiff is the mere holder of a stake, which is equally contested by the other parties, and as to which the plaintiff stands wholly indifferent between them. The right of a court of equity to compel an interpleader exists where two or more persons claim the same thing under different titles, or in separate interests, from another person who does not claim any title or interest therein himself, and, not knowing to which of the claimants he ought to deliver that which he has in his custody, is either molested by an action or actions brought against him, or fears he may suffer injury from the conflicting claims of the parties. 2 Story's Eq. Jurisprudence, § 806.

[4] The bill ordinarily assumes that the person filing it is in the position of a stakeholder, and that he has the property actually in his possession which is severally claimed by two or more persons, and that he does not know to which of the claimants he ought to deliver it, and he therefore prays that they may be required to interplead and to state their claims, so that the court may adjudge to whom the property in controversy belongs. It is elementary that the bill cannot be maintained by one who is not in possession of the property or fund in dispute. Killian v. Ebbinghaus, 110 U. S. 568, 4 Sup. Ct. 232, 28 L. Ed. 246; Marvin v. Ellwood, 11 Paige Ch. (N. Y.) 365; Mt. Holly, etc., Turnpike Co. v. Ferree, 17 N. J. Eq. 117. It is too late to file the bill after the property has been delivered over. Henderson v. Watson, 23 Grant, Ch. (U. C.), 355; Burnett v. Anderson, 1 Meriv. 405, 35 Eng. Reprint, 723.

[5] The appellant, however, relies upon the federal Bills of Lading Act, the shipment of the goods being in foreign commerce and subject, therefore, to its provisions. The statute referred to is the Act of August 29, 1916, c. 415, 39 Stat. 538 (Comp. St. §§ 8604aaa–8604w). The material provisions of the act, as concerns the matter now under consideration may be found in the margin.[1]

---

[1] Sec. 2. That a bill in which it is stated that the goods are consigned or destined to a specified person is a straight bill.

Sec. 3. That a bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill. Any provision in such a bill or in any notice, contract, rule, regulation, or tariff that

That the bills of lading which were issued in this case were order bills is conceded. It is the ingenious argument of the appellant that it has a right to interplead the various alleged claimants under sections 17 and 18 of the Bills of Lading Act (sections 8604i, 8604ii). Section 17 of the act, set forth in the margin, provides that the carrier may require all known claimants to interplead, where more than one person claims the title to the goods; and section 18 authorizes the carrier to bring legal proceedings to compel all claimants to interplead and excuses it from liability for refusing to deliver the goods because of adverse claims made.

In the enactment of the statute it was not the purpose of Congress to revolutionize the law relating to interpleader by authorizing one who had parted with the possession of the goods to compel thereafter the claimants to interplead and determine to which one of them he should have made delivery. The obvious purpose of the enactment is the protection of a carrier who has not parted with the possession of the goods, and is in doubt as to the proper person to whom delivery should be made, and who refuses to deliver to either. When the goods arrived at their destination, the carrier under section 14 (section 8604gg) might have made delivery of the goods on a court order as therein provided or by interpleading the claimants as provided in sections 17 and 18. But when it made delivery of the goods to one claimant it lost any right it up to that time possessed of requiring the claimants to interplead.

it is nonnegotiable shall be null and void and shall not affect its negotiability within the meaning of this act unless upon its face and in writing agreed to by the shipper.

Sec. 7. That the insertion in an order bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill or constitute notice to a purchaser thereof of any rights or equities of such person in the goods.

Sec. 8. That a carrier, in the absence of some lawful excuse, is bound to deliver goods upon a demand made either by the consignee named in the bill for the goods or, if the bill is an order bill, by the holder thereof, if such a demand is accompanied by (a) an offer in good faith to satisfy the carrier's lawful lien upon the goods; (b) possession of the bill of lading and an offer in good faith to surrender, properly indorsed, the bill which was issued for the goods, if the bill is an order bill; and (c) a readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the carrier. In case the carrier refuses or fails to deliver the goods, in compliance with a demand by the consignee or holder so accompanied, the burden shall be upon the carrier to establish the existence of a lawful excuse for such refusal or failure.

Sec. 11. That except as provided in section twenty-six, and except when compelled by legal process, if a carrier delivers goods for which an order bill had been issued, the negotiation of which would transfer the right to the possession of the goods, and fails to take up and cancel the bill, such carrier shall be liable for failure to deliver the goods to anyone who for value and in good faith purchases such bill, whether such purchaser acquired title to the bill before or after the delivery of the goods by the carrier and notwithstanding delivery was made to the person entitled thereto.

Sec. 14. That where an order bill has been lost, stolen, or destroyed a court of competent jurisdiction may order the delivery, of the goods upon satisfactory proof of such loss, theft, or destruction and upon the giving of a bond, with sufficient surety, to be approved by the court, to protect the carrier or any

But the appellant also seems to think that the bill can be maintained as a bill of peace to avoid multiplicity of suits. Where the various causes of action are purely legal, and equity has no jurisdiction of each of them separately, but its jurisdiction is founded exclusively on the existence of its power to prevent a multiplicity of actions, a somewhat stricter rule appears to be enforced than in those cases where the numerous different causes of action are of an equitable nature. In Street's Federal Equity Practice, § 429, that writer says:

"Where all the causes of action are of an equitable nature, the chief consideration is that of convenience; where they are exclusively of a legal nature, the court has to take notice of the general rule that equitable jurisdiction cannot be exercised, if the remedy at law can be considered adequate. Hence, from the mere fact that the maintaining of a single suit in equity would lessen the number of actions at law, it does not necessarily follow that equity will entertain the bill."

In this case the appellant seeks to have a court of equity wrest jurisdiction from a court of law, on the ground that several persons have brought actions for conversion against it for the misdelivery of goods for which they held distinct and separate bills of lading. In Hipp v. Babin, 19 How. 271, 15 L. Ed. 633, Mr. Justice Campbell, speaking for the court, said that—

person injured by such delivery from any liability or loss incurred by reason of the original bill remaining outstanding. The court may also in its discretion order the payment of the carrier's reasonable costs and counsel fees: Provided, a voluntary indemnifying bond without order of court shall be binding on the parties thereto. The delivery of goods under an order of the court, as provided in this section, shall not relieve the carrier from liability to a person to whom the order bill has been or shall be negotiated for value without notice of the proceedings or of the delivery of the goods.

Sec. 17. That if more than one person claim the title or possession of goods, the carrier may require all known claimants to interplead, either as a defense to an action brought against him for nondelivery of the goods or as an original suit, whichever is appropriate.

Sec. 18. That if some one other than the consignee or the person in possession of the bill has a claim to the title or possession of the goods, and the carrier has information of such claim, the carrier shall be excused from liability for refusing to deliver the goods, either to the consignee or person in possession of the bill or to the adverse claimant, until the carrier has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead.

Sec. 19. That except as provided in the two preceding sections and in section nine, no right or title of a third person, unless enforced by legal process, shall be a defense to an action brought by the consignee of a straight bill or by the holder of an order bill against the carrier for failure to deliver the goods on demand.

Sec. 31. That a person to whom an order bill has been duly negotiated acquires thereby (a) such title to the goods as the person negotiating the bill to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the consignee and consignor had or had power to convey to a purchaser in good faith for value; and (b) the direct obligation of the carrier to hold possession of the goods for him according to the terms of the bill as fully as if the carrier had contracted directly with him.

Comp. St. §§ 8604aaaa, 8604b, 8604d, 8604dd, 8604f, 8604gg, 8604i, 8604ii, 8604j, 8604p.

"Whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury."

[6] The circumstances under which a court of equity will assume jurisdiction in order to avoid a multiplicity of suits is one upon which the courts have not been in entire accord. The subject was considered by this court at some length in 1914, in Watson v. Huntington, 215 Fed. 472, 131 C. C. A. 520; the court not being, however, in full accord relating to the matter. The majority opinion held that a mere community in interest between plaintiffs in matters of law and fact did not make it admissible for all such plaintiffs, each of whom had a separate cause of action at law against the defendant for a tort, to join in a suit in equity in order to avoid a multiplicity of actions. In that case there were 38 plaintiffs, and it was said that practically the same evidence would have to be produced 38 times, with the same questions of law to be determined. The court then said that—

"An examination of the authorities convinces us that a mere community of interest in matters of law and fact does not make it admissible to bring all plaintiffs into one suit in equity in order to avoid a multiplicity of actions."

And it was also said that—

"The mere fact that a defendant has committed a tort by which he injured one of a hundred parties cannot give him an equity to prevent each and every one of the parties so injured from maintaining an action against him to recover damages."

It needs no extended argument to show that if 38 plaintiffs cannot file a bill to avoid a multiplicity of suits against a tort-feasor, under the circumstances stated, the tort-feasor certainly cannot maintain one to compel them to give up their right to sue at law. Neither is it necessary to point out that, if the plea to avoid a multiplicity of suits is unavailing where 38 actions are involved, it is much less so where 4 or 5 are involved.

In the case now before us for determination it appears, however, that none of the parties are suing or claiming under more than their own particular bills of lading. They all hold separate sets of bills of lading covering different and separate lots of merchandise. Furthermore, Brill's alleged claim, whatever it be, is said to be paramount to any of the bills of lading; hence the suit, if any, should be his, and not that of this petitioner, and the holders of the bills are making no claims against each other nor against Brill, but each has a separate title to separate bills of lading, separately acquired at different times, and under which the steamship company, if liable, is solely and separately liable. Hence there is no unity of claim, no unity of title, and no unity of right or cause of action. Furthermore, the separate rights do not grow out of some single alleged wrongful act, but the right of each holder of a bill of lading arises from the alleged separate wrong-doing in delivering to Brill the goods covered by that particular bill of lading. There is also no privity between any or either of the parties

mentioned in the petition either as to estate, rights, titles, liabilities, or obligations.

[7] Moreover, the fact that the appellant fears that Leo Brill & Co. may in a certain contingency bring suit against the plaintiffs in the actions at law, and that Thomas E. Huser, as trustee in bankruptcy of the firm of George Mogensen, may find it necessary to determine the state of the account between Leo Brill & Co. and the firm of George Mogensen, does not justify the application of the appellant to be permitted to file this bill and avoid a multiplicity of suits. If the steamship company misdelivered the merchandise, it expiates its wrongful conversion by a money judgment. The equities between the respondents are adjustable between themselves, and the misdelivering steamship company is not concerned in them.

[8] The multiplicity of suits which confers jurisdiction in equity is a multiplicity of suits to which the complainant will be a party. A multiplicity of suits against the respondents, to which the complainant will not be subjected, certainly affords it no ground for coming into equity with its present application. Thomas v. Council Bluffs Canning Co., 92 Fed. 422, 34 C. C. A. 428; Watson v. Huntington, 215 Fed. 472, 131 C. C. A. 520; Scruggs v. American Cent. Ins. Co., 176 Fed. 224, 100 C. C. A. 142, 36 L. R. A. (N. S.) 92. It does not rest with the appellant to urge as a foundation for its bill that it will save the respondents from a multiplicity of suits. Equitable Life Assurance Society v. Brown, 213 U. S. 25, 51, 29 Sup. Ct. 404, 53 L. Ed. 682.

The order appealed from is affirmed, and the application for an injunction pendente lite was properly denied.