WILLIAM J. KEHL, *et ux.,* v. MIAMI TITLE & ABSTRACT CO., CECIL BOWEN, SR., *et ux.,* and NEWELL BOWEN, *et ux.*

196 So. 610
Division B
Opinion Filed May 17, 1940
Rehearing Denied June 19, 1940

*Lyle D. Holcomb* and *Dante B. Fascell,* for Appellants; *Joseph Weintraub,* and *J. C. Morcock,* for Appellee.

CHAPMAN, J.—The record in this case discloses that on July 8, 1937, William J. Kehl, appellant, and Newell Bowen, appellee, signed an agreement whereby Kehl agreed to buy certain real estate situated in Dade County, Florida, for $2,000.00 and Bowen agreed to sell. The trade was to be handled by the Guaranty Title & Abstract Co., but the parties later transferred the closing of the deal to the Miami Title & Abstract Co., and the vendor agreed to pay and paid all extra costs necessary to insure the title to the property. The vendor's title to said land was obtained through a municipal tax foreclosure suit. The sales agreement between the vendor and vendee contained language, viz.:

"It is understood and agreed that this property is being sold and purchased subject to the restrictions and limitations of record common to the neighborhood and subject to any easements for public utilities, which may be of record, or may become liens through pending legislation before consummation of contract.

"It is agreed that this transaction shall be closed and the purchaser shall pay the balance of the first payment and execute all papers necessary to be executed by him for the completion of his purchase within *Fifteen (15)* days from delivery or tender to him of an abstract of the said property; otherwise the sum this day paid shall be retained by the seller as liquidated and agreed damages, and the seller shall be relieved from all obligations under this agreement.

"The seller is to furnish an abstract showing his title to be good and insurable, but in the event that the title shall not be found good and insurable, the seller agrees to use reasonable diligence to make the said title good and insurable, and shall have a reasonable time so to do, and if after reasonable diligence on his part said title shall not be made good and insurable within a reasonable time, the seller shall return the money this day paid and all moneys that may have been paid to him under this contract, and thereupon he shall be released from all obligations hereunder. Or, upon request of the purchaser, he shall deliver the title in its existing condition.

"This contract shall be binding upon both parties when approved by the owner of the property above described."

On August 4, 1937, Miami Title & Abstract Co. requested William J. Kehl to advance the remainder of the purchase price, proration taxes and insurance costs in the total sum of $1,927.18, which he did, and the Miami Title & Abstract Co. recorded a deed from the vendor Bowen to the wife of the vendee Kehl conveying the land described in the vendor and vendee sales agreement, and the deed was duly recorded among the public records of Dade County, Florida.

The Miami Title & Abstract Co., on August 17, 1937, discovered a motion filed in the tax foreclosure suit to test the jurisdiction of the court over the vendor Cecil Bowen, Sr., and that a closing of the trade would be suspended until a ruling of the court on said motion. On October 28, 1937, an order was entered denying the motion and dismissing the *lis pendens* filed in the case of Mackey v. Bowen, and on October 27, 1937, Mackey filed a suit to review the tax foreclosure case and made Cecil Bowen, Sr., a party and a *lis pendens* was filed and recorded on October 27, 1937. The

suit is referred to as Chancery Case No. 50,644 and remains undisposed of.

On December 20, 1937, vendee Kehl demanded that the Miami Title & Abstract Co. close the deal and issue title insurance upon the lands involved or to refund to the vendee the full amount of the money paid under the terms of the vendor and vendee sales agreement. The Miami Title & Abstract Co. refused: (a) to close the deal; (b) to issue the title insurance; and (c) to refund all moneys paid to it by the vendee. When so advised, the vendee Kehl tendered a special warranty deed signed by himself and wife to Cecil Bowen, Sr., and advised him of the vendee's election to rescind the trade, and upon tendering the said deed demanded the return of all moneys paid under the vendor and vendee sales agreement and subsequent demands were made for the return of the moneys paid, and upon refusal thereof the vendee Kehl, on February 16, 1938, filed suit in the Civil Court of Record of Dade County, Florida, for the purpose of recovering all sums paid under the vendor and vendee sales agreement.

On July 21, 1938, Miami Title & Abstract Co. filed in the Circuit Court of Dade County, Florida, its bill of interpleader against William J. Kehl and wife, Elizabeth P. Kehl, Cecil Bowen, Sr., and wife Loucile Bowen, Newell Bowen and wife Lucy M. Bowen, in which the terms of the entire trade were set forth, and alleged that William J. Kehl, on or about December 20, 1937, elected to rescind said transaction and demanded a return to him of the sum of $2,027.18 deposited with the Miami Title & Abstract Co. as escrow agent.

It is alleged that on August 4, 1937, the Miami Title & Abstract Co. issued to William J. Kehl a commitment, as agent for Title Insurance Company whereby it undertook to

insure the title to the lands, and the letter and schedules attached are viz.:

"To Mr. William J. Kehl,
No. 1225 North Maplewood Ave.,
Chicago, Illinois.

"Pursuant to your application for title insurance on lands and premises described in Schedule 'A' hereof, Miami Title & Abstract Co. has caused a search of all public land records to be made, and beg to advise that as of 28th day of July, 1937, at 8:00 o'clock A. M. (which date shall be construed as the date of this letter) we will cause to be insured the title of William J. Kehl, or his grantee of mortgagee to said lands and premises subject only to such exceptions and requirements as are shown in Schedule 'B' hereof.

"Upon receipt by this office of satisfactory evidence that all exceptions and requirements set forth under Schedule 'B' have been satisfied or will be satisfied simultaneously with the transfer of title in contemplation, and upon payment of its charges for title insurance as applied for, and for abstract and other incidental charges incurred, this Company will cause to be issued to you, or to your nominee as interest may appear, a policy of title insurance by Title Insurance Corporation of America, of Miami, Florida, on its customary form applicable to the transaction contemplated in the sum of Two Thousand and No/100 ($2,000.00) Dollars, showing in Schedule 'B' of such policy only such exceptions, as now appear in Schedule 'C' hereof and such as appear upon a continuation search of such public records down to date of closing your transaction which are not or cannot be disposed of before issuing such policy.

"This commitment is delivered and accepted upon the understanding that you have no personal knowledge or intimation of any defect, objection, lien or encumbrance affect-

ing said premises other than those shown under Schedule 'B' hereof, and your failure to disclose any such personal information shall render this commitment and any policy issued based hereon null and void as to such defect, objection, lien or encumbrance.

"Nothing contained in this commitment shall be construed as a guarantee against the consequences of the exercise and enforcement or attempted enforcement of governmental 'police power' over the property described herein.

"The liability of the Company under this Commitment shall become null and void upon the issuance of a policy of title insurance as contemplated herein, and in any event at the expiration of ninety days from date, unless extended by this Company in writing.

"IN WITNESS WHEREOF, the said Company has caused these presents to be signed as of the day and date above designated.

"MIAMI TITLE & ABSTRACT CO.

By ----------------------------------------------
Vice-President."

### "SCHEDULE 'A'

"Legal description of the real estate referred to in this Commitment:

"Lot twelve (12) of WOLVERINE PARK, a subdivision according to the plat thereof as recorded in Plat Book 6, page 124, of the Public Records of Dade County, Florida.

### "SCHEDULE 'B'

"REQUIREMENTS TO BE COMPLIED WITH BEFORE SATISFACTORY POLICY OF TITLE CAN BE ISSUED:

"Item 1. Proper documents creating the interest to be insured must be executed and procured or duly filed for record, to-wit:

"Warranty Deed from Cecil Bowen, Sr., and Wife, if married, to William J. Kehl.

"Item 2. If disbursements are not made by us, then satisfactory evidence must be submitted showing that full consideration for the interest to be insured has passed:

"SCHEDULE 'C'

"1. Rights or claims of parties in possession not shown of record and question of boundary and location of improvements dependent on actual survey for determination.

"2. All assessments and taxes for the year 1937 and all subsequent years.

"3. Conditions, restrictions and limitations, together with easements reserved for public utilities purposes, as set forth in warranty deed, * * * of the public records of Dade County. Florida.

"4. Municipal zoning ordinances of Miami, Florida.

"5. Nothing contained in the policy shall be construed as a guarantee against the consequences of the exercise and enforcement or attempted enforcement of governmental 'police power' over the property described herein.

"6. Liens for labor performed, or materials furnished, within the last ninety days, as provided by law, if any.

"7. Easement: The South ten feet (10') of the captioned property was condemned by the City of Miami in condemnation proceedings under common law case No. 15810, Circuit Court of Dade County, Florida."

It is further alleged that Cecil Bowen, Sr., Newell Bowen, and William J. Kehl each claim the sum of $2,027.18 now in possession of the Miami Title & Abstract Co., and each demands that said sum be paid to him. The money was deposited in the Registry of the Court and the prayer is that a final decree be made and entered discharging the Miami

Title & Abstract Co. from any and all liabilities under the said escrow agreement and that the Court enter an order determining the ownership of the money and that the plaintiff be allowed attorney's fees and court costs.

Answers were filed by counsel for the defendant in which it was contended that from the facts appearing in the bill of interpleader the plaintiff was not entitled to receive its solicitor's fees, costs or other sum of money deposited, because the facts did not as a matter of law support the bill of interpleader.

The case was referred to a special master, who took the evidence of the respective parties and made his recommendations to the lower court as to the terms of the final decree to be entered by the court, but his recommendations were not approved and confirmed by the lower court, but a decree was entered discharging the Miami Title & Abstract Co. from all liability or obligations under the escrow agreement and allowed solicitor's fees and court costs. From this final decree an appeal has been perfected to this Court.

It is contended that the decree appealed from should be reversed by this Court because the Miami Title & Abstract Co. was not an innocent stakeholder, but was bound by certain contractual relations existing between the Miami Title & Abstract Co. and the vendor and vendee and for this reason the Miami Title & Abstract Co. could not lawfully maintain its bill of interpleader.

The vendor and vendee sales agreement provided that Bowen was to furnish an abstract showing his title to be good and insurable and if found not to be good and insurable, he agreed to use reasonable diligence to make the title good and insurable, and if after reasonable diligence on his part the title could not be made good and insurable within a reasonable length of time, the said vendor Bowen would

return the money paid by the vendee and the parties would be released from said vendor and vendee sales agreement. The record shows that vendor Bowen failed to furnish an abstract showing a good and insurable title and the title to the property became clouded by a *lis pendens* notice filed October 27, 1937, and the *lis pendens* notice appeared of record in Dade County when the case at bar was filed and vendor Bowen failed to remove the *lis pendens* notice or cloud on the title and failed to obtain an insurance policy as to the title, and on December 22, 1937, the title was uninsurable, when William J. Kehl re-tendered the deed of conveyance and requested a refund of all money paid by him.

The commitment agreement of the Miami Title & Abstract Co. obligated it to issue a policy of title insurance under conditions set out in Schedules "B" and "C" but the title insurance policy never issued and the title as disclosed by the record was uninsurable after October 27, 1937, and on December 22, 1937, vendor Kehl re-tendered a deed to Bowen and demanded a return of all moneys paid. It was the obligation of the Miami Title & Abstract Co. to issue a policy of insurance on the title or to refund to William J. Kehl all moneys paid. There was no obligation on the part of Kehl to take title to the property with a suit pending against it, and upon the failure of Bowen to deliver a good and insurable title according to his vendor's agreement and the refusal of the Miami Title & Abstract Co. to issue a policy of insurance on the title because of the pending suit instituted October 27, 1937, the parties should have been restored to their *status quo*.

The Miami Title & Abstract Co. was obligated to issue a policy of insurance on the title to the property and declined so to do because of the *lis pendens* notice dated October 27, 1937. It was likewise an escrow agent and charged with

the duty of correctly interpreting the escrow agreement under which some $2,000.00 was paid to it by William J. Kehl. Can it be said under these circumstances that the Miami Title & Abstract Co. was an innocent stakeholder and without interest in the money deposited with it? It is well established law that if a person is interested in the funds held by him, an interpleader suit cannot be maintained. See Brown v. Marsh, 98 Fla. 253, 123 So. 762; Jacksonville Ice & Cold Storage Co. v. South Florida Farms Co., 91 Fla. 593, 109 So. 212, 49 A. L. R. 957; Lowry v. Downing Mfg. Co., 80 Fla. 745, 87 So. 65.

It is contended that the Miami Title & Abstract Co. was willing and ready to issue a policy of insurance on the title between the dates of August 17, 1937, and October 28, 1938, not subject however to the result of the suit filed October 27, 1937. We are at a loss to see or observe how such a policy would conform to the vendor and vendee sales agreement or with the terms of the commitment letter to William J. Kehl on the part of the Miami Title & Abstract Co. It was the lawful duty of Bowen and the Miami Title & Abstract Co. to deliver a title as described in the vendor and vendee sales agreement and to issue a policy of insurance, and upon failure so to do, return to William J. Kehl the money by him paid.

In the case of Florida East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 So. 622, this Court had before it the conditions and circumstances under which a bill of interpleader could or would be considered, and said:

"First: Where the party seeking interpleader is, with respect to the subject matter of the suit, under a contractual relation with one of the adverse claimants independent of the title or right under which the conflicting claimants are alleged to claim, interpleader will be denied for in such cir-

cumstances the complainant does not stand indifferent. Such independent contractual relation can not be determined in litigation solely between the conflicting claimants, who are made defendants, but must be litigated by the parties between whom such independent relation exists, a circumstance fatal to interpleader. A party complainant can not have an order that two adverse claimants interplead when one question to be tried in determining the defendant's title to the subject matter, is whether or not the complainant, by reason of his own act, is under an independent contractual liability to one of the defendants with reference to the subject matter. See Fogg v. Goode, 78 Fla. 138, 82 Sou. R. 614.

"Second: One seeking the advantage of a bill of interpleader must show not only that he stands indifferent between the claimants and that he is without interest in the controversy between them, but that he is in the position of a mere innocent stakeholder, and that no act on his part has caused the embarrassment of conflicting claims and the peril of double vexation upon which he founds his demands for interpleader. When the complainant stands to either of the other parties in the relation of a wrong doer with respect to the subject matter of the suit, he can not have relief by interpleader. See Montpelier v. Capital Savings Bank, 56 Atl. R. 89; 98 A. S. R. 834; Stephenson v. Burdette, 48 So. E. R. 846, 10 L. R. A. (N. S.) 748; Rauch v. Ft. Dearborn Bank, 79 N. E. R. 273, 11 L. R. A. (N. S.) 545, 33 C. J. 439."

It cannot be said on this record that the Miami Title & Abstract Co. is an innocent stakeholder of the funds left with it by William J. Kehl but in addition thereto the title company had outstanding a commitment to issue a policy of insurance on the title and declined so to do and filed its bill of interpleader. We do not think the Miami Title & Ab-

stract Co., under the facts of this case as a matter of law, was in a position to maintain said suit and the same should hve been on final hearing dismissed by the lower court.

For the error pointed out the decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.