FARMERS IRRIGATING DITCH & RESERVOIR COMPANY, a Colorado mutual ditch company, et al., Plaintiffs–Appellees,

v.

Nick KANE, et al., Defendants–Appellants.

No. 85–2917.

United States Court of Appeals, Tenth Circuit.

April 22, 1988.

David M. Haynes (Joseph C. French of French & Stone, P.C., with him on the brief), Boulder, Colo., for defendants-appellants.

Robert W. Brandes, Jr. of March, Myatt, Korb, Carroll & Brandes, Fort Collins, Colo., for Farmers Irrigating Ditch & Reservoir Co., plaintiffs-appellees.

Before SEYMOUR and
McWILLIAMS, Circuit Judges, and
SAFFELS, District Judge.*

---

* Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

1. Under 1982 Colorado law, an owner of a reservoir was absolutely liable for damages caused by water escaping a reservoir. C.R.S.

McWILLIAMS, Circuit Judge.

This interpleader action has its genesis in a flood. Farmers Irrigating Ditch & Reservoir Company, a Colorado mutual ditch company with its principal place of business in Loveland, Colorado (hereinafter referred to as "Farmers"), was the owner of a reservoir known as Lawn Lake in Larimer County, Colorado. On July 12, 1982, an embankment of the Lawn Lake Reservoir broke and released a great amount of water which flowed down and through a natural channel known as Fall River into and through the Town of Estes Park and thereafter into Lake Estes, where it was contained. The flooding caused several deaths and great property damage in and around Estes Park, some estimates of the latter being as high as $170,000,000. Several civil actions against Farmers, its shareholders, directors, employees, and others were filed in the state courts of Colorado by persons who suffered damages in the flood.[1] The Colorado Supreme Court by order consolidated these several state actions in a single multi-district action in the District Court of Larimer County.

It was in this general setting that the present complaint in interpleader was filed in the United States District Court for the District of Colorado, pursuant to 28 U.S.C. §§ 1335, 1397, and 2361. There were three sets of plaintiffs, so to speak: (1) two insurance companies, Millers' Mutual Insurance Association of Illinois and Iowa National Mutual Insurance Company, each of which had issued a policy of liability insurance to Farmers; (2) Farmers; and (3) twenty-eight named individuals, all of whom were shareholders, directors or employees of Farmers. The defendants in the complaint for intervention were a great number of persons or business entities described and identified by name, as well as all "other persons" who suffered or claimed to have suffered damages as a result of the Lawn Lake flood.

§ 37–87–104(1) (Supp.1982). Further, shareholders of the owner reservoir were immune from suit if the reservoir owner carried liability insurance of at least $1,000,000. C.R.S. § 37–87–104(2) (Supp.1982).

The two insurance companies tendered to the court the sum of $1,400,000, which was the maximum coverage provided Farmers under the combined policies. Farmers, admitting "potential liability" in a sum in excess of $8,500,000, tendered $465.88 in cash, 500 pounds of copper sulfate of a value of approximately $400.00, and unpaid shareholder assessments valued at $1,233.32. Additionally, Farmers had a pending cause of action in the District Court of Larimer County against the City of Loveland, and others, which Farmers offered to tender into the registry of the court. Farmers placed an approximate value of $241,954.00 on its pending suit against the City of Loveland. Finally, Farmers stated that it owned, "as the totality of its corporate assets, fee interests and easement interests in the real estate within the State of Colorado which constitute the land upon which Lawn Lake Reservoir, a diversion structure, and irrigation ditches are situated," having "no known value" but a "replacement value of $1,000,000.00." Farmers did *not* tender certain water rights, title to which it had received from its shareholders, and that was, and is, a major controversy between the parties.

Contemporaneous with the filing of their complaint in interpleader, the plaintiffs filed a motion for a preliminary injunction and asked that the district court enjoin the defendants from instituting, or prosecuting, actions against any of the plaintiffs for damages arising out of the flood. The district court, however, only enjoined the defendants from instituting, or prosecuting, any action "affecting the property involved in this case," and, as we understand it, did not enjoin the claimants from instituting or prosecuting other actions against the plaintiffs.

The defendants filed a motion to dismiss, which, after hearing, was granted as to the shareholders, directors, and employees of Farmers, who were accordingly dismissed from the case. However, the motion to dismiss was denied as to the two insurance companies and Farmers. In refusing to dismiss Farmers from the interpleader proceeding, the district court stated in its June 20, 1983, order that "interpleader is ... an equitable solution to the problem created when claims against a debtor exceed the debtor's assets. If the debtor does not contest liability, or if he wishes to resolve the claims, he places his assets in the hands of the court. The court then provides an equitable distribution for the creditor claimants and a haven for the debtor [by] injunctive relief." [2]

Previously, the two insurance carriers had delivered $1,400,000.00 to the registry of the court, and ultimately Farmers paid over to the court $2,405.93 in cash, which amounts were ordered to be prorated among the claimants. The district court rejected the non-cash tenders by Farmers, i.e., its lawsuit against the City of Loveland and the land upon which the reservoir was located, which land was apparently heavily encumbered. The final orders were that both the insurance companies and Farmers were discharged from any further liability for damages caused by the flood, and the preliminary injunction, which applied only to the interpleaded property, was made permanent. The claimants now appeal the several orders of the district court as they relate to Farmers only.

As just indicated, the shareholders, directors, and employees of Farmers have not appealed the district court's order granting the claimants' motion to dismiss them from the proceeding, nor have the claimants appealed the district court's order prorating the proceeds from the two insurance policies among the claimants and discharging the insurance companies from any further liability for damages caused by the flood. The only appeal is by the claimants from the district court's order discharging Farmers from any further liability for damages caused by the flood.

---

2. It is suggested that such reasoning ignores the fact that if the creditors were allowed to prosecute their respective claims against the debtor to judgment, such judgments could not only be levied against the assets of the debtor as of the date of judgment, but could also be levied for a period of years thereafter against any assets acquired by the judgment debtor subsequent to the date of judgment.

Also, as earlier stated, a major dispute in the trial court was whether the water rights of the individual shareholders who had assigned their respective titles to Farmers (1) constituted assets of Farmers which should have been tendered by Farmers in the interpleader proceeding, or (2) remained the property of the individual shareholders. The district court held that these water rights belonged to the shareholders and were not assets of Farmers, relying on such cases as *Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975). The claimants challenge the correctness of that ruling, and ask that if we do not reverse the district court's ruling, we at least certify the question to the Colorado Supreme Court for resolution. In the view we take of the matter, we need not here concern ourselves with the ownership of the water rights, since we hold Farmers was not a proper party in interpleader, and the district court erred in denying claimants' motion to dismiss Farmers from the interpleader proceeding.

■ The question, as we see it, is whether an admitted tortfeasor, such as Farmers, who has caused considerable damage to a great number of persons, can file an action in interpleader and tender into the registry of the court a minimal sum, in this case approximately $2,500.00, which sum purportedly represents all of its assets, and ask that such sum be prorated among the numerous claimants and that it then be discharged from any further liability for damages arising out of the flood. In our view, the answer to that question is "no."

■ The fact that the two insurance companies had an action in interpleader does not bootstrap Farmers. The latter must stand on its own two feet. Our attention has not been directed to any case where a tortfeasor in a multi-claim tort can admit liability, tender into court a minimal amount of money with the representation that such is all he has, force the claimants to prorate the amount deposited, and then obtain an order discharging him from any further liability for his tort. The typical plaintiff in interpleader is an innocent stakeholder who is subject to competing claims. It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader. For a discussion of this rule, *see* 48 C.J.S. *Interpleader* § 12 at 189 (1981). For cases recognizing the rule, *see Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75, 82 (10th Cir.1955), *cert. denied,* 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853, *reh'g denied,* 350 U.S. 1016, 76 S.Ct. 657, 100 L.Ed. 875 (1956); *Mallory S.S. Co. v. Thalheim,* 277 F. 196 (2d Cir.1921); *Pan American Fire & Casualty Co. v. Revere,* 188 F.Supp. 474 (E.D.La.1960); *Kehl v. Miami Title & Abstract Co.,* 143 Fla. 9, 196 So. 610 (1940); and *Bell v. Nutmeg Airways Corp.,* 66 F.R.D. 1 (D.Conn.1975). *Cf. United States v. Major Oil Corp.,* 583 F.2d 1152 (10th Cir.1978) (one is not entitled to the protections of interpleader if the hazard which one seeks to avoid was occasioned by one's own act); and *Travelers Indemn. Co. v. Greyhound Lines, Inc.,* 260 F.Supp. 530 (W.D.La.1966) (found no authority to enjoin suits against the interpleader's insured or other tortfeasors), *aff'd,* 377 F.2d 325 (5th Cir.) (per curiam), *cert. denied,* 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1967).

In *Holcomb,* the Tenth Circuit recognized the general rule to be as follows: "A tortfeasor cannot obtain protection in an action in the nature of interpleader against the consequences of its own wrong," citing *Mallory S.S. Co., supra.* In the instant case, Farmers concedes that under the 1982 Colorado statutes it is "absolutely liable" for all damage caused by the water which escaped its reservoir. Accordingly, it is not a proper party in interpleader.

.We believe the result reached in the instant case is entirely consistent with the rationale of *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). In *Tashire,* the Supreme Court held that an insurance company which had interpleaded monies representing its liability under an insurance policy was not entitled to an injunction which

not only prohibited the prosecution of actions against it, but also prohibited actions against its insured, the tortfeasor. In vacating that part of the injunctive order entered by the district court which enjoined suits against the tortfeasor, the Supreme Court observed "that federal interpleader was not intended to serve the function of a 'bill of peace' in the context of multi-party litigation arising out of a mass tort." *Id.* at 537, 87 S.Ct. at 1207.

The judgment of the district court as it relates to Farmers is reversed and the case is remanded to the district court with direction that it grant claimants' motion to dismiss Farmers, and that Farmers be dismissed from the proceeding.