MATEER t/a SUMMIT HILL RADIO & T.V. *v.*
RELIANCE INSURANCE COMPANY, INC.

[No. 554, September Term, 1966.]

644

*Decided October 13, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Karl L. Feissner,* with whom were *Erwin A. Alpern* and *Alpern & Feissner* on the brief, for appellant.

*Philip O. Roach,* with whom was *Barry H. Helfand* on the brief, for appellee.

RUTLEDGE, J., delivered the opinion of the Court.

The plaintiff appellant appeals from the granting of a di-

rected verdict for the defendant at the close of the plaintiff's case in a suit for damages under an insurance contract.

On June 20, 1964, the plaintiff appellant entered into an insurance contract with the appellee for the term of one year (renewing an earlier policy). The policy insured against loss or damage by reason of a number of causes including loss or damage by flood.

On February 17, 1965, the Washington Suburban Sanitary Commission, while repairing a water main, turned off the water in the lines running to a coin operated laundry operated in leased space above appellant's shop. When the water was turned back on, it blew a fitting off one of the pipes running to this laundry, and the resultant steam and water permeated and seeped into the appellant's shop below and caused extensive damage to articles being repaired, as well as damage to the premises and equipment. Some of the damaged equipment and appliances were on shelves and tables, and some on the floor.

In the course of the trial the appellant sought to introduce into evidence a letter written by an agent of the appellee dated June 11, 1965 to Mr. Feissner. The letter reads as follows:

"Gentlemen:

This will acknowledge receipt of your June 8th letter regarding captioned assured's loss of February 17, 1965. You state you have been advised by the Agency that the Company is declining coverage. This is not altogether correct.

Based on the information developed by our Adjuster we offered to settle with Mr. Mateer for those items which were inundated on the floor of his store but not for those damaged on work benches, shelves and tables. This apparently was not acceptable to Mr. Mateer.

The policy, which you have undoubtedly reviewed insures against direct loss or damage by flood. It is our opinion that the items which were not on the floor were not damaged by flood which is the basis for our declination in respect to these particular items and while we also had certain reservations regarding those

on the floor we were prepared to resolve any doubt there may be on that question in favor of the assured.

> Very truly yours,
> RELIANCE INSURANCE
> COMPANY
> /s/ Alex Baird
> Marine Claims Manager"

The lower court refused to permit the introduction of the letter into evidence on the ground that it was merely an offer to compromise a controversy involved in litigation.

The appellant also made a proffer to show that under an earlier policy, before the renewal of the present one, that similar damage had occurred under similar circumstances and that the company had paid the claim for such damage. This proffer was refused by the lower court.

The appellant contends that the lower court erred in excluding the letter of June 11 by the appellee's agent, and cites as authority, the case of *Federal Mutual Insurance Company v. Lewis,* 231 Md. 587, 191 A. 2d 437 (1963), where the Court held that an offer of settlement, as distinguished from an offer of compromise, is admissible to the extent that it admits liability in any amount.

The Court finds no error in the exclusion of the letter. It was purely an offer of compromise, admitted no liability, and the rule set out in *Biggs v. Langhammer,* 103 Md. 94, 102, 63 Atl. 198 (1906) governs. There the Court said:

> "The rule is well settled that 'offers by a party with a view to compromise, to pay or to accept a sum of money, or to make deductions, and in general to secure a settlement, are inadmissible,' and though there are some cases which hold that such offer is admissible, unless stated to be without prejudice, yet the prevailing rule is that the offer will be presumed to have been made without prejudice."

The appellant also contends that the meaning of the word "flood" in the policy was ambiguous, and for that reason the lower court should have admitted into evidence the proffer to

show that under similar circumstances the appellee had paid a similar claim prior to the time the present policy was renewed.

This contention requires consideration of the meaning of the word "flood," the understanding and the intention of the parties, and whether the term is ambiguous as used in the insurance policy.

By dictionary definition the word "flood" has many meanings. While Maryland courts have not had occasion to consider the import and meaning of the word, courts in other jurisdictions have.

In *Urse v. Maryland Casualty Co.*, 589 F. Supp. 897 (W. Va. 1945), where a basement bowling alley was damaged by water from a pool collected outside of a building which seeped through walls and doors and came into a rest room, the Court held that the loss came within the exclusion clause of the policy for damages caused by "floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; * * *."

In *Sun Underwriters Ins. Co. of N. Y. v. Bunkley*, 233 S. W. 153 (Texas 1950), heavy rains caused water to run into a chicken house and drown a number of chickens. A claim under an insurance policy insuring against "flood" was denied, but the policy read "Flood (meaning the rising of natural bodies of water)."

In *Poole v. Sun Underwriters Ins. Co. of N. Y.*, 274 N. W. 658 (S. D. 1937), an insured recovered under an insurance policy for damage to his automobile when water from a severe rainstorm gathered in the streets and broke the basement window of a garage where his car was kept, where the policy insured against damage by reason of discharge or leakage of water, but excluded damage caused by rain or "flood water." The Court found that "flood waters" meant those which escape from a stream or other body of water and overflow adjacent territory; "surface waters" are those which are produced by rainfall, melting snow or springs.

In the *City of Tulsa v. Grier*, 243 Pac. 753 (Okla. 1924), in a suit involving the flooding of the plaintiff's land, the Court

said, "it must be remembered that the word 'flood' is a relative term, and may refer to mere surface water causing a temporary inconvenience, and may also refer to such quantities of water as caused the damage in the present case."

In the present policy there was no attempt to define "flood" nor were there any clarifications by way of exclusions. While originally the word "flood" had a riparian connotation, through centuries of change and urbanization it has come to have a less restricted meaning. Today we commonly speak of a cellar or basement being "flooded" without regard to whether the water comes from the overflow of a stream, from a hard downpour, or from the bursting of pipes.

The appellee, who wrote the policy in question, could have clarified the term "flood" either by definition or by way of exclusions. We find that there was a latent ambiguity in the term, that the appellee cannot take advantage of its original restricted meaning, and that since there was an ambiguity, the proffer to show a prior claim and payment should have been received in evidence. In *Standard, Inc. v. Alexander, Inc.*, 214 Md. 214, 133 A. 2d 460 (1956), at page 226 the Court said, "The conduct of the parties to a written contract may amount to a construction of ambiguous provisions in it." *Cf. Shuman v. Gordon Investment Corp.*, 247 Md. 265, 232 A. 2d 256 (1967).

Maryland does not follow the rule of many jurisdictions that an insurance policy is to be construed most strongly against the insurer. The Maryland rule is that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. However, if an insurance company draws an ambiguous clause, the ambiguity is to be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally. *Penn., Etc., Ins. Co. v. Shirer*, 224 Md. 530, 168 A. 2d 525 (1960).

We find that the lower court ruled correctly covering the damages to items on the shelves and work tables; the evidence disclosed that these items were damaged at most only by steam or drops of water descending from the floor above. But we find the lower court did err in refusing the plaintiff's proffer and directing a verdict as to the damaged items on the floor.

For the reasons stated, the judgment must be reversed and the cause remanded for a new trial.

> *Judgment reversed and case remanded for a new trial; costs to be paid by the appellee.*