**MILLERS' MUTUAL INSURANCE AS-SOCIATION OF ILLINOIS, An Illinois Mutual Insurance Association, Plaintiff,**

v.

**IOWA NATIONAL MUTUAL INSUR-ANCE COMPANY, an Iowa Corporation, Defendant.**

**Civ. A. No. 84–K–2393.**

United States District Court, D. Colorado.

Sept. 18, 1985.

Gary L. Palumbo, Bayer, Carey & McGee, Denver, Colo., for plaintiff.

Michael W. Anderson, & John M. Palmeri, White & Steele, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff Millers' Mutual Insurance Association filed suit seeking a declaratory judgment that defendant Iowa National Insurance Company is required to contribute on a pro-rata basis to the defense costs of suits involving the parties' mutual insured. Millers' also seeks money damages for the defendant's past failure to contribute to such costs.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are completely diverse and the amount in controversy exceeds $10,000.00. This matter is before me now on Iowa's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief can be granted. Further, the parties have briefed the ultimate issue in the case; namely, whether Iowa must share with Millers' in the cost of defending Farmers.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For the reasons set forth below, Iowa has failed to meet this difficult burden. Accordingly, its motion to dismiss for failure to state a claim is denied.

## BACKGROUND

On July 15, 1982 the Lawn Lake Dam in Larimer County, Colorado ruptured sending torrents of water to flood the town of Estes Park. Farmers Irrigating Ditch and Reservoir Company owned the reservoir where the embankment collapsed, and has since been beseiged by a multitude of lawsuits claiming personal and property damage.

At the time of the flood, Millers' was Farmers primary insurer. Millers' policy provided coverage to $100,000.00 for property damage per occurrence and $300,000.00 for personal injury damage per occurrence. In addition to indemnification, Millers' policy created certain defense obligations:

> the insurer shall defend any suit against the insured seeking damages on account of such bodily injury or property damage ... but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been *exhausted by payment of judgments or settlements.*

At the time of the flood, Iowa was an excess insurer of Farmers'. The Iowa policy obligated Iowa to indemnify Farmers to the extent its liability caused by an occurrence was in excess of the liability of an underlying primary insurer, ($400,000.00), up to a limit of $1,000,000.00. In addition to indemnification liability the Iowa insurance contract states that

> When underlying insurance does apply to an occurrence: ... In the event that the limits of liability of the underlying insurance ... are *exhausted by occurrence,* the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence ...

In anticipation of judgments in excess of both Millers' primary and Iowa's excess limits, Farmers, Millers' and Iowa filed an interpleader action in the U.S. District Court for the District of Colorado. *Millers', et al., v. John Grace, et al.,* No. 82–JM–1517 (D.Colo. March 28, 1985, amended April 10, 1985). Millers' and Iowa deposited money in the court registry commensurate with their policy limits. Judge Moore discharged Millers' and Iowa from any further liability "arising as a matter of contract from policies of insurance between the plaintiff companies and the Farmers Irrigating Ditch and Reservoir Company." Slip opinion at 4.

In an amended order, Judge Moore added that, notwithstanding the court's acceptance of the insurers' interpleaded funds, "This discharge is not a judicial resolution by this court of any of the issues of the

relationship or duties between the plaintiff insurance companies and their insureds". Amended Order, April 10, 1984.

Subsequently, Millers' filed a declaratory judgment action against Farmers. *Millers' Mutual Insurance Company v. Farmers Irrigating Ditch and Reservoir Company,* No. 82–Z–2196 (D.Colo. November 19, 1984). Millers' argued that the deposit of its policy limits in the previous interpleader action constituted an exhaustion by "payment of judgments or settlements" of its policy limits so as to relieve Millers' of its obligation to defend.

Ruling from the bench, Judge Weinshienk held that the "deposit of funds in the interpleader action does not terminate the obligations under the insurance policy to defend." Reporter's Transcript at p. 5–6. Thus, Millers' is continuing to defend Farmers against claims arising from the flood.

Millers' then brought this present action seeking a declaratory judgment that Iowa has an obligation to share on a pro rata basis the costs of defense and settlements already incurred and to be incurred in the future. Alternatively, Millers' argues that Iowa became solely responsible for all defense costs once it became clear to Iowa that Millers' policy was "exhausted".

Iowa seeks dismissal of all of Millers' claims on two bases. First, Iowa argues that Judge Weinshienk's order that Millers' duty to defend continues operates collaterally to estop Millers' from litigating whether Iowa is also bound to defend. Second, Iowa argues that absent a contractual agreement between the parties, Iowa has no duty to share in defense costs with Millers'.

## I. THE COLLATERAL ESTOPPEL ISSUE

■ There are four requirements to be satisfied for collateral estoppel to apply: First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was there a final judgment on the merits? Third, was the party against

whom the plea is asserted a party or in privity with a party to the prior adjudication? And, fourth, did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

*Rodriguez v. Bar-S Food Co.,* 567 F.Supp. 1241 at 1244 (D.Colo.1983), citing *Pomeroy v. Waitkus,* 183 Colo. 344 at 350–351, 517 P.2d 396 at 399 (1973).

Applying these criteria to Judge Weinshienk's decision in *Millers' v. Farmers, supra,* it is clear that collateral estoppel does not apply. The issue decided in that adjudication is not identical with the one in this case. "The issue in this case", Judge Weinshienk noted, Reporter's transcript p. 2, "is whether the deposit of the funds in the federal interpleader action terminate the plaintiff's obligations under the insurance policy." The duties and obligations of Iowa as an excess insurer were never addressed. Specifically, Judge Weinshienk construed the phrase "exhaustion by payment of judgment or settlement" in Millers' policy—such being the occurrence relieving Millers' of its defense obligations. In applying pro-insured canons of construction and public policy, Judge Weinshienk narrowly construed the policy to require Millers' to defend and noted that

> case law and Colorado policy is [sic] very clear that if there is some ambiguity in insurance policy language, it must be construed against the company; and here, there appears to be an argument that "settlements" means "interpleader". It (the policy) does not say interpleader. To stretch that language, I think, is not construing the language against the company ...

Reporter's transcript p. 4. (Parenthetical phrase added.)

The condition precedent to Iowa's duty to defend is not "exhaustion by the payment of judgment or settlements", but rather, merely, "exhaustion by occurrence." The issue in the prior case, whether "exhaustion by the payment of judgment or settlements" has occurred, is not identical with

the threshold issue before me today, whether mere "exhaustion by occurrence" has happened.

Iowa's collateral estoppel contention is rejected not only because the policy language at issue in *Millers' v. Farmers* is different than that before me here, but for reasons of public policy. Judge Weinshienk's restrictive construction of the policy's "exhaustion by the payment of judgments or settlements" language was ordered in light of a "very strong state policy that an insured has a legitimate expectation of a defense in a case". Reporter's transcript p. 4–5.

A pro-insured construction should neither directly nor indirectly through collateral estoppel be invoked in the instant case brought to determine the rights and liabilities between two insurers. Millers' does not deny its liability to defend Farmers; Farmers' expectation of a defense is fully protected as a result of the *Millers' v. Farmers* ruling. Iowa is not within the ambit of the canon of construction and public policy which it seeks to invoke.

## II. THE OCCURRENCE OF THE CONDITION PRECEDENT OF IOWA'S DUTY TO DEFEND

■ The condition precedent to Iowa's duty to defend has occurred. Millers' policy limits have been "exhausted by occurrence". Words used in a document are to be given their plain meaning. *Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.*, 633 P.2d 1081 (Colo.1981). The plain meaning of "exhaustion" in the Iowa insurance contract includes exhaustion by way of interpleader. I reach this conclusion with due consideration of the parties briefs and with an eye toward the avoidance of unnecessary litigation.

Thus far, I have addressed whether *Millers' v. Farmers* operates collaterally to estop Millers' from asserting that Iowa has a duty to defend the parties' mutual insured. I have ruled that Millers' is not so estopped. Next, I held that the condition precedent of Iowa's duty to defend has occurred. Now, I address the rights and

obligations between the two insurer's, both obligated to defend. In so doing I not only deny Iowa's motion to dismiss but also rule upon the germinative issue in this case, i.e. Iowa's duty to contribute to defense costs.

## III. IOWA'S DUTY TO CONTRIBUTE TO DEFENSE COSTS

■ Generally speaking, there is a split of authority as to whether an excess insurer is obligated to contribute to the cost of defending an insured where the defense is provided by a primary insurer and a recovery is obtained which is in excess of the limits of the primary insurance policy. See, generally, *Annotation. Performance by one insurer of its duty to defend as excusing failure of other insurers equally obligated to defend.* 90 A.L.R.3d 1199 (1979). On the one hand it has been held that

> The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.

*United States Fidelity and Guaranty Company v. Tri-State Insurance Company,* 285 F.2d 579 at 582, (C.A.10 1960)—applying Oklahoma law. Numerous other courts, however, have held that where

> the claim is over the policy limits of the primary policy and only one insurer undertakes the defense, the primary insurer and the excess insurer will each be liable for a pro-rata share of the costs of defense in proportion to the amount of the claim each is required to pay.

*American Fidelity Insurance Co. v. Employers Mutual Casualty Company,* 593 P.2d 14 at 23, 3 Kan.App. 245 at 255 (1979).

Due to the factual peculiarities of this case, none of the precedents cited by the parties nor which my research has uncovered is dispositive. The following factual circumstances distinguish the present case: 1) Both insurers interpleading their policy limits, (*Millers' et al., v. Grace et al.,* No. 82–JM–1517); 2) A prior ruling that the primary insurer's duty to defend continues

notwithstanding the interpleading of its policy limits, (*Millers' v. Farmers*, No. 82–Z–2196); and, 3) my finding, *supra*, that while the primary policy has not been "exhausted by the payment of judgments or settlements" so as to terminate the primary's defense obligations, it has been exhausted for the purposes of triggering the excess insurer's duty to defend.

Iowa places great reliance upon a California Supreme Court opinion, *Signal Companies v. Harbor Insurance Co.*, 27 Cal.App.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980). This reliance is misplaced. In *Signal* the primary insurer was denied a right to contribution for defense costs from the excess insurer. The *Signal* court concluded that "the expenses were incurred almost entirely *prior* both to settlement of the litigation and exhaustion of Pacific's (the primary insurer) policy coverage". 27 Cal.App.3d at 369,165 Cal.Rptr. at 805, 612 P.2d at 895, (emphasis and parenthetical phrase added). "In such a situation", the court added, "there is no reasonable basis for assuming that the reasonable expectations of either the insured or the primary carrier were that the excess carrier would participate in defense costs beyond the express terms of the policy". 27 Cal.App.3d at 369, 165 Cal.Rptr. at 805, 612 P.2d at 895.

*Signal* is factually inapposite because the defense costs presently at issue were, and still are being incurred, *subsequent* to the exhaustion of the primary policy limits. Such being the case, Farmers' and Millers' reasonable expectation is that Iowa will participate in the defense; The express condition precedent to Iowa's duty to defend, "exhaustion by occurrence" of Millers' policy limits, has occurred.

While *Signal* is of little precedential value, it does articulate the rationale behind my denial of Iowa's motion to dismiss:

We expressly decline to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which effect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers ... (citations omitted) ... Moreover, we affirm the wisdom expressed in *American Automobile Insurance Company v. Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195–196, 318 P.2d 84, 86: "the reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other ... their respective obligations flow from equitable principle designed to accomplish ultimate justice in the bearing of a specific burden.

27 Cal.App.3d at 369, 165 Cal.Rptr. at 805, 612 P.2d at 895.

Millers' claims a right to contribution from Iowa under the theory of equitable subrogation, defined by the 10th Circuit as a doctrine "grounded in equity and (which) arises by operation of law, (and) which gives to a third person who has been compelled to pay a remedy against one who, in justice, ought to pay." *Insurance Company of North America v. The Medical Protective Company*, 768 F.2d 315, 320 (10th Cir.1985). See also *Behlen Manufacturing Company v. First National Bank of Englewood*, 472 P.2d 703, 28 Colo.App. 300 (1970). In the present case Millers' is equitably subrogated to the rights of Farmers to whom Iowa is contractually obligated to defend.

In *Continental Casualty Co. v. Zurich Insurance Co.*, 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961), the court ordered that the costs of defense be shared by all the obligated insurers in proportion to their respective indemnification losses and noted that:

Under general principles of equitable subrogation ... it is our view that all obligated carriers who have refused to defend should be required to share in the costs of the insured's defense ... A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus ... enjoys a chance that the costs of defense will be provided by some other

insurer at no expense to the company which declines to carry out its contractual commitments.

57 Cal.2d at 37, 17 Cal.Rptr. at 18, 366 P.2d at 461.

It is likely that the cost of defending Farmers against all claims brought against it in connection with the rupture of Lawn Lake Dam could run into the hundreds of thousands of dollars. Where both Millers' and Iowa are contractually committed to defend, and the premiums collected from the insured reflect the risk that the insurers will be so obligated, equity will not permit Iowa the windfall of having their defense obligations discharged by Millers'.

Iowa cites a number of cases wherein an excess insurer who defended against a claim seeking damages in an amount below its liability was denied contribution from the derelict primary insurer. Not only are such cases factually inapposite, but a mechanical application of their "no contribution" rule would work palpable injustice in the case at bar.

In *Continental Casualty Co. v. Fireman's Fund Insurance Co.*, 403 F.2d 291, (C.A.10 1968), the 10th Circuit Court of Appeals upheld our Judge Arraj's denial of an excess insurer's claim for contribution for defense costs from the primary insurer. The rationale of the court's decision was that by defending the claim against the insured the excess insurer conferred a benefit upon itself by precluding its own excess indemnification liability. In the present case, however, since Millers' indemnification liability is exhausted, its continued defense is of no benefit to itself. Further, the district judge noted that "there certainly has been no showing that it (the defending excess insurer) incurred any greater costs in defending than it would have had the ... (primary insurer) ... assisted in the defense". 403 F.2d at 323 (parenthetical phrase added). On the contrary, in the present case Millers' will incur substantially greater defense costs if Iowa is not ordered to share. The equities compelling me to require contribution from Iowa in this case were absent in *Continen-*

*tal Casualty*, supra. *Canal Insurance Co. v. Occidental Fire and Casualty Co. of North Carolina*, 462 F.Supp. 512 (E.D. Okla.1978), cited by Iowa and with facts similar to *Continental Casualty, supra*, is likewise inapplicable.

Iowa cites *United States Fidelity and Guaranty Co. v. Tri-State Insurance Company*, 285 F.2d 579 (C.A.10 1960), as being dispositive of the issue before me and requiring that its motion to dismiss be granted. *U.S.F. & G.*, however, is factually distinct. First, U.S.F. & G. was an excess insurer which incurred defense costs and sought contribution from the non-defending primary insurer; the opposite situation is now before me. Second, in denying U.S.F. & G. contribution from Tri-State the court noted that "no contractual relationship existed between Tri-State and U.S.F. & G. and the latter does not claim by subrogation". 285 F.2d at 582. In its response to Iowa's motion to dismiss, Millers' specifically premises its right to have Iowa share in the defense costs upon the doctrine of equitable subrogation and not "contribution" per se. The pleading infirmity which precluded the sharing of costs in *U.S.F. & G.* is absent in the present case. Further, *U.S.F. & G.* fairly implies that had subrogation rather than contribution been pleaded, relief would have been awarded.

In *Brayman v. Northwestern Mutual Insurance Co.*, 381 F.Supp. 362 (D.Colo. 1974), cited by Iowa in support of its position, a defending co-insurer was denied contribution from another co-insurer; a decision following *U.S.F. & G.*, supra. In *Brayman*, the ultimate judgment of the claim defended against was within the defending co-insurer's policy limits. *Brayman*, therefore, is irrelevant to the present suit as Millers' is defending suits whose judgments most certainly will be far in excess of its policy limits. As noted with reference to *Continental Casualty*, supra, the equities compelling me to deny Iowa's 12(b)(6) motion were not present in *Brayman*.

Finally, Iowa cites *Insurance Company of North America v. The Medical Protec-*

*tive Company, supra,* wherein a primary insurer was denied contribution from the excess insurer for costs incurred in defense of a claim resulting in judgment in excess of the primary policy limits. A close reading of *INA,* however, supports my denial of Iowa's motion to dismiss. The 10th Circuit recognized the doctrine of equitable subrogation but declined to invoke it in light of the unclean hands of the primary insurer:

> The court in *Signal* went on to state that it "decline(d) to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise ..." Indeed, under all the circumstances of this case, we do not believe that Medical Protective is in any position to invoke equity in order to obtain contribution to Dr. Torbey's defense costs.

768 F.2d at p. 323. The primary insurer was specifically found to have "acted in bad faith in failing to settle within its policy limits". At p. 321. In the present case, the equities are clearly in Millers' favor.

IT IS THEREFORE ORDERED THAT;

Defendant's motion to dismiss is denied. Further, because the parties have presented the issue in their briefs, IT IS ORDERED that the parties will each be liable for a share of the costs of defending Farmers in proportion to the amounts which they have deposited into the court registry pursuant to *Millers' v. Farmers,* supra. In that action Millers' interpleaded $400,-000.00 and Iowa interpleaded $600,000.00. Accordingly, Iowa is liable for 60% of all defense costs and Millers' for 40%.