Nick KANE; Penny Kane; Nicky's, Ltd., a Colorado corporation; and Fall River Chalet Condominium Association, a Colorado non-profit corporation, Petitioners,

v.

ROYAL INSURANCE COMPANY OF AMERICA, an Illinois corporation; American and Foreign Insurance Company, a Delaware corporation; and Reliance Insurance Company, a Pennsylvania corporation, Respondents.

No. 87SC341.

Supreme Court of Colorado,
En Banc.

Jan. 17, 1989.

Rehearing Denied Feb. 6, 1989.

French & Stone, P.C., Joseph C. French, David M. Haynes, Boulder, for petitioners.

Anstine & Hill, William C. Jolliffe, Arthur H. Anstine, Denver, for Royal Ins. Co. of America and Foreign Ins. Co.

Greengard & Senter, Mark C. Overturf, Denver, for Reliance Ins. Co.

Holland & Hart, Wiley E. Mayne, Curt Krechevsky, Denver, for amicus curiae Adams–Arapahoe Joint School Dist. No. 28–J.

ROVIRA, Justice.

We granted certiorari pursuant to C.A.R. 50 to review an order of the Larimer County District Court which, relying on *Bartlett v. Continental Divide Insurance Co.,* 697 P.2d 412 (Colo.App.1984), held that the damage to petitioners' property was caused by a flood. The trial court then found that the insurance policies issued by the respondents did not provide coverage for the losses claimed by petitioners and granted the respondents' motions for summary judgment.

The issues on which we granted the petition are: (1) Whether the failure of Lawn Lake Dam, causing water to inundate the petitioners' property in Estate Park, can be considered a "flood" and therefore excluded from coverage under the petitioners' "all risk" insurance policy; and (2) Whether the "efficient moving cause" of the damage was the negligence of third parties in allowing the dam to fail, rather than the "flood" itself, so that coverage should not be barred by the flood exclusion.

We answer the first question in the affirmative and the second in the negative. Accordingly, we affirm the judgment of the district court.

## I.

On the morning of July 15, 1982, the Lawn Lake Dam in Rocky Mountain National Park failed. The water released by the dam swept downhill into the Fall River. A restaurant, motel, condominium complex, and resort lay in the path of the water. The property was owned by petitioners, Nick and Penny Kane, and leased to petitioners, Fall River Chalet Condominium Association and Nicky's, Ltd. (collectively insureds). The damage to the property was extensive.

Prior to the dam failure, Royal Insurance Company and American and Foreign Insurance Company (Royal) had issued a business comprehensive policy to Nicky's, Ltd. covering all risks of direct physical loss to the property except those specifically excluded.[1] Likewise, Reliance Insurance Company (Reliance) had issued a special business owners policy to Fall River Chalet Condominium Association covering all risks of direct physical loss subject to specific exclusions in the policy. The policies issued by Royal and Reliance (collectively insurers) are substantially similar.

Insureds filed a claim for their loss, but insurers denied coverage claiming that an exclusionary clause in the policies relieved them of liability. The Reliance policy contained the following exclusion from coverage:

---

1. "An 'all risk' policy is a special type of coverage extending to risks not usually covered under other insurance, and recovery is allowed thereunder for all losses, other than those resulting from a willful or fraudulent act of the insured, unless the policy contains a specific provision expressly excluding a particular loss from coverage." *Steamboat Dev. Corp. v. Bacjac Indus., Inc.,* 701 P.2d 127 (Colo.App.1985).

The Company shall not be liable for loss:

. . . .

12. caused by, resulting from, contributed to, or aggravated by any of the following:

. . . .

(b) flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.

The policy issued by Royal contained an exclusion with language identical in all material respects.

Insureds then filed a complaint seeking a determination of coverage under the insurance policies and damages. The insurers filed answers in which, relying on the exclusionary clause, they denied coverage. Both insureds and insurers moved for summary judgment. In granting summary judgment for insureds, the trial court held that the "terms 'flood', 'flood waters', or 'surface water' [do] not include a situation of an artificially-impounded or contained body of water that escapes and causes damage." The district court further held that "the 'efficient cause of [insureds'] damages' was the failure of the dam and not a flood as contemplated within the insurance exclusion."

Several months later in *Bartlett v. Continental Divide Insurance Co.*, 697 P.2d 412 (Colo.App.1984), the court of appeals, in construing an almost identical exclusionary clause in a case involving the Lawn Lake Dam failure, held that the property damage was caused by a flood and was thus excluded from coverage under the insurance policy. After the judgment of the court of appeals was affirmed by operation of law because of an equally divided court, *Bartlett v. Continental Divide Ins. Co.*, 730 P.2d 308 (Colo.1986), the insurers renewed their motions for summary judgment. The trial court, concluding that it was bound by the reasoning and decision of the court of appeals, held that the "policies of the [insurers] did not provide coverage to the [insureds] for their losses" and granted the motions.

## II.

Insureds argue that there is coverage under the insurance policies because the Lawn Lake Dam failure is not a "flood" as contemplated by the flood exclusion and the term "flood" is ambiguous. Specifically, they assert that since "flood" is not defined in the policy and no distinction is made between naturally and artificially caused floods, it is reasonable for property owners to associate the term with natural events, not artificial disasters. Consequently, the exclusion clauses are ambiguous and should be strictly construed against the insurers. We reject this argument because we believe that the term "flood" is not ambiguous as applied to the facts of this case.

■ Ambiguous language in insurance contracts should be construed against the insurer. *See, e.g., Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 232 (Colo.1988); *United States Fidelity & Guar. Co. v. First Nat'l Bank*, 147 Colo. 446, 450, 364 P.2d 202, 204 (1961). Unambiguous contracts, however, should be enforced according to their terms. *See, e.g., Jernigan*, 753 P.2d at 232; *Griffin v. United Bank*, 198 Colo. 239, 242, 599 P.2d 866, 868 (1979).

■ Mere disagreement between the parties about the meaning of a term does not create ambiguity. *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247, 251 (Colo.1983). "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978) (citing *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965); *United States Fidelity & Guar. Co. v. First Nat'l Bank*, 147 Colo. 446, 364 P.2d 202 (1961); *People ex rel. Park Reservoir Co. v. Hinderlider*, 98 Colo. 505, 57 P.2d 894 (1936)).

■ The generally accepted meaning of the term "flood" does not include a

distinction between artificial and natural floods. For example, *Webster's New World Dictionary* 535 (2d ed. 1974), defines "flood" as: "[A]n overflowing of water on an area normally dry; inundation; deluge...." *Webster's Ninth New Collegiate Dictionary* 474 (9th ed. 1988), defines the term as: "[A] rising and overflowing of a body of water esp[ecially] onto normally dry land...." *Black's Law Dictionary* (5th ed. 1979), contains a similar definition: "An inundation of water over land not usually covered by it. Water which inundates area of surface of earth where it ordinarily would not be expected to be." The inundation of insureds' normally dry land falls squarely within these generally accepted definitions of the term "flood."[2] *See Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412 (Colo.App.1984) (no distinction in insurance policy between natural and artificial causes of flood; to make such distinction would be to rewrite the terms of the policy).

Insureds argue that *Ferndale Development Co. v. Great American Insurance Co.*, 34 Colo.App. 258, 527 P.2d 939 (1974), requires us to reach a different conclusion. We disagree. In *Ferndale*, the court of appeals found the term "flood" used in a similarly worded insurance policy exclusion to be ambiguous in a situation where a broken city water line caused the "inundation of the footings and foundations of partially completed condominiums being constructed by the [insured]." *Id.* at 259, 527 P.2d at 940. As a result, the court

construed the term against the insurer, finding that "water escaping from burst water mains" was not a "flood" within the exclusion clause of that policy. *Id.* at 261, 527 P.2d at 940.

The fact that the water main in *Ferndale* was a man-made object like the dam in this case does not control our decision. Under the facts of *Ferndale*, the term "flood" is ambiguous not only because the water was released from a man-made object, but also because a water main is not so clearly a "body of water," *see Webster's Ninth New Collegiate Dictionary* 474 (9th ed. 1988), and because the amount of water released was less clearly an "inundation" or "deluge," *see Webster's New World Dictionary* 535 (2d ed. 1974). Cumulatively, the doubts were sufficient in *Ferndale* for the court to resolve them in favor of the insured.

Here, however, there is no basis for holding that the term "flood" is ambiguous as applied to "the great overflowing of water" caused by the failure of Lawn Lake Dam. That is, when this exclusion is construed in harmony with the generally accepted meaning of the term "flood" and in the context of the facts of this case, there is no doubt that this large-scale inundation of water was a "flood."

In addition to the factual distinction between *Ferndale* and this case, the definition of "flood waters" upon which the *Ferndale* court relied supports our conclusion that the term "flood" is not ambiguous

---

2. The language of at least one Colorado statute as it stood in 1982 also provides some evidence that "flood" in ordinary usage is not limited to natural flooding:

> Except as provided in subsection (2) of this section, the owner of a reservoir shall be liable for all damages arising from leakage or overflow of the waters therefrom or *floods caused by breaking of the embankments of such reservoir.*

§ 37–87–104(1), 15 C.R.S. (1982 Supp.) (amended 1984, repealed and reenacted 1986) (emphasis added).

Similarly, in *Millers' Mutual Insurance Association v. Iowa National Mutual Insurance Co.*, 618 F.Supp. 301 (D.Colo.1985), another case arising out of the Lawn Lake Dam failure, the term "flood" was used to describe what occurred:

> On July 15, 1982, the Lawn Lake Dam in Larimer County, Colorado ruptured sending torrents of water to *flood* the town of Estes Park....
>
> At the time of the *flood*....

*Id.* at 302 (emphasis added).

Furthermore, in *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229 (10th Cir. 1988), a case also arising from the Lawn Lake Dam failure, the court referred to the "flood" several times as follows:

> This interpleader action has its genesis in a *flood*.... The *flooding* caused several deaths and great property damage in and around Estes Park....
>
> ... The defendants [included] "other persons" who suffered ... damages as a result of the Lawn Lake *flood*.

*Id.* at 230 (emphasis added).

under the facts of this case. The *Ferndale* court quoted from 5 J. Appleman, *Insurance Law and Practice* § 3145 (1970), as follows: " 'Flood waters' are those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel...." *Ferndale*, 527 P.2d at 940.

Although leakage from a ruptured city water line does not fall within this definition, the rising and overflowing of Fall River does. This definition makes no distinction between naturally and artificially caused floods, and in this case, the Fall River clearly overflowed "above the highest line of [its] ordinary flow."

Insureds also rely on *Robert Dorsen, Inc. v. Aetna Casualty & Surety Co.*, 562 F.Supp. 495 (D.C.1983), and *Mateer v. Reliance Insurance Co.*, 247 Md. 643, 233 A.2d 797 (1967), for the proposition that the term "flood" is ambiguous. These cases, like *Ferndale*, involve damage from broken water mains rather than damage from the overflow of a body of water. In addition, they do not involve a deluge or overwhelming rush of water as is present in the case before us. Therefore, these cases are distinguishable on the same basis as *Ferndale*.

Insureds next contend that *City of Tulsa v. Grier*, 114 Okla. 93, 243 P. 753 (1924), supports their argument that the term "flood" has variable meanings. In *Grier*, the plaintiff successfully sued the city for flood damages to real property resulting from the construction of a sewer and street embankment which closed the course of a stream. The city argued that the embankment and sewer caused no more flooding than occurred before the construction. In concluding that the improvements caused a vast difference in the extent of the inundation, the court stated: "[I]t must be remembered that the word 'flood' is a relative term, and may refer to mere surface water causing a temporary inconvenience, and may also refer to such quantities of water as caused the damage in the present

case." *Grier*, 243 P. at 757. Although the word "flood" may be a "relative term," if the back up of water from the construction of a sewer and street embankment can be referred to as a "flood," then we have no difficulty concluding that the rising and overflowing of Fall River is also a "flood."

Next, insureds analogize the use of the term "flood" in 33 U.S.C. § 702c to that term's use in the insurance policy exclusion here. The second paragraph of 33 U.S.C. § 702c states: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place...." Insureds rely on two cases which deal with 33 U.S.C. § 702c. These cases limit the term "flood" in the statute to naturally caused floods. *Valley Cattle Co. v. United States*, 258 F.Supp. 12 (D.Hawaii 1966); *Guy F. Atkinson Co. v. Merritt, Chapman, & Scott Corp.*, 126 F.Supp. 406 (N.D.Cal.1954).

In *Valley Cattle* and *Atkinson*, the courts relied on congressional intent in concluding that "flood" refers only to naturally caused floods. In this case, however, we are not concerned with the meaning of the term "flood" in a federal statute where congressional intent is relevant. Here, we are concerned with the meaning of the term "flood" in an insurance policy. Therefore, even if Congress had intended to restrict "flood" to natural events, that does not dictate the meaning of the term in the insurance policies at issue. However, contrary to the position of the insureds, we believe that the interpretation of the term "flood" in 33 U.S.C. § 702c followed by the vast majority of the federal courts is consistent with our analysis and conclusion.

In *Aetna Insurance Co. v. United States*, 628 F.2d 1201 (9th Cir.1980), which involved the application of 33 U.S.C. § 702c in the context of the collapse of the Teton Dam, the court, in response to an argument that section 702c would not apply to floods caused by negligence, stated:

Any flood caused by government negligence is also caused in part by the natural conditions extant at the time of the negligence: e.g., the amount of the rainfall which preceded the flood and hence

the amount of water being stored. To attempt to distinguish between ordinary and unusual natural conditions ... would be a very difficult task. Such an inquiry would necessarily frustrate section 702c's purpose of permitting the government to engage in flood control without fear of liability. We agree with the Eighth Circuit that such a test would "lead the court into the morass of 'contributing causes,' 'superseding causes,' and 'intervening causes.' "

*Aetna,* 628 F.2d at 1204 (citations omitted). It concluded by holding that the immunity provision is not limited to water damage attributable to a natural disaster.

Furthermore, the United States Supreme Court, in *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), considered the meaning of "flood" and "floodwaters" in 33 U.S.C. § 702c (1986). *James* involved two consolidated cases where recreational users of reservoirs of federal flood control projects were injured or drowned when they were swept through retaining structures after those structures were opened by the United States Corps of Engineers to control flooding. In holding that 33 U.S.C. § 702c (1986) grants immunity to the United States for damages, the Court said:

> Nor do the terms "flood" and "floodwaters" create any uncertainty in the context of accidents such as the ones at issue in these cases.... It is thus clear from § 702c's plain language that the terms "flood" and "floodwaters" apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control.

*Id.,* 106 S.Ct. at 3121.

■ The term "flood" as used in 33 U.S. C. § 702c (1986) is not limited to natural floods, but instead includes both naturally and artificially caused floods. Likewise, we believe that the term "flood" in the insurance policies under review includes both naturally and artificially caused floods.

Insureds finally argue that the federal government, through the National Flood Insurance Program, recognizes the natural/artificial distinction for the term "flood." We believe that this argument is incorrect.

Congress formerly authorized the Secretary of Housing and Urban Development [3] to establish a national flood insurance program to allow interested persons to purchase flood insurance. 42 U.S.C. § 4011 (1977). The definitions in the statute providing for that program state: "[T]he term 'flood' shall have such meaning as may be prescribed in regulations of the Director [formerly Secretary], and may include inundation from rising waters or from the overflow of streams, rivers, or other bodies of water...." 42 U.S.C. § 4121(a)(1) (Supp. 1987). Federal regulations expand this definition to include "damage from a general condition of flooding in the area which results from other than natural causes, such as the breaking of a dam." 44 C.F.R. § 61.4(b) (1987). The Federal Emergency Management Agency regulations support our conclusion that the term "flood" includes both naturally and artificially caused events.

■ In interpreting a contract of insurance, courts will not force an ambiguity in order to resolve it against an insurer. *Martinez v. Hawkeye–Security Ins. Co.,* 195 Colo. 184, 188, 576 P.2d 1017, 1019 (1978). An insurer cannot be held liable beyond the scope of risks which have been clearly covered in the insurance policy. *Id.* at 188, 576 P.2d at 1019.

■ Terms used in an insurance contract are to be given their meaning according to common usage. *Reed v. United States Fidelity & Guar. Co.,* 176 Colo. 568, 572, 491 P.2d 1377, 1379 (1971). In interpreting insurance contracts, courts are not at liberty to raise doubts where there are none or to make a new contract between the insured and the insurer. *Higgins v.*

---

**3.** The Director of the Federal Emergency Management Agency is now authorized to ad-minister this program. 42 U.S.C. § 4011 (Supp. 1987).

*Connecticut Fire Ins. Co.,* 163 Colo. 292, 295–96, 430 P.2d 479, 480 (1967).

We decline to force an ambiguity where the meaning of the term "flood" is clear in the context of the facts of this case. Accordingly, we affirm the decision of the district court on this issue.

## III.

 Insureds claim that, even if the flood exclusion applies, the "efficient moving cause" of their loss was a covered risk, namely, third party negligence leading to the failure of Lawn Lake Dam. This argument is based on *Koncilja v. Trinity Universal Insurance Co.,* 35 Colo.App. 27, 528 P.2d 939 (1974). We believe that *Koncilja* is factually distinguishable. Furthermore, we believe that the "efficient moving cause" rule must yield to the language of the insurance policy in question. Therefore, we reject insureds' argument.

In *Koncilja,* leakage from a broken water pipe embedded in the floor of a house caused the ground beneath the house to subside which, in turn, caused the house to settle and crack. The homeowners' insurance policy insured against loss occurring as a result of "[a]ccidental discharge, leakage or overflow of water or steam from within a plumbing ... system." *Id.* at 29, 528 P.2d at 940. The homeowners' claim was denied on the ground that the insurance policy excluded loss "caused by, resulting from, contributed to, or aggravated by any earth movement [or] water below the surface of the ground." *Id.* at 29, 528 P.2d at 940.

The trial court reasoned that the homeowners' loss had been proximately caused by water escaping from within the plumbing system and was therefore a covered loss. It construed the exclusion to apply only to underground water which had not escaped from the domestic system or to earth movement caused by anything other

than accidental discharge of water from the system. The court of appeals affirmed, holding that the trial court was correct in determining that the discharge of the water into the ground from the plumbing system was the efficient proximate cause of the loss. In support of its adoption of the "efficient moving cause" rule, the court quoted the general principle set forth in 6 G. Couch, *Cyclopedia of Insurance Law* § 1466 (1930).[4] That quotation provides:

> [I]n determining whether a loss is within an exception in a policy, where there is a concurrency of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.

*Koncilja,* 35 Colo.App. at 30, 528 P.2d at 940–41.

The court noted that although the settling of the earth may have operated more immediately in producing the damages, the predominant or efficient proximate cause of the loss was the accidental leakage from the plumbing system. The court reasoned that where policy provisions are inconsistent or when read together they give rise to an ambiguity as to the extent of policy coverage, the contract should be construed in favor of coverage and against the insurance company which, by its draftsmanship, created the ambiguity. The court then concluded that the loss intended to be excluded by the exclusion clauses meant "any earth movement" or "water below the surface" resulting from causes having no relation to the escape of water from the plumbing system.

Unlike the insurance policy in *Koncilja,* the policy provisions in this case are not inconsistent and when read together are not ambiguous. The policies cover "all risks of direct physical loss," but only "subject to all the provisions contained herein."[5] Those provisions exclude cover-

---

**4.** The *Koncilja* court incorrectly attributed this quote to "6 G. Couch, *Cyclopedia of Insurance Law* § 1466 (2d ed. R. Anderson)." Instead, this quote is found in the 1930 edition of Couch. The current edition, the second edition revised, includes similar language setting forth the same

principle. *See* 18 G. Couch, *Cyclopedia of Insurance Law* § 74:711 (2d ed. rev. 1983).

**5.** This language is from the Royal policy. The Reliance policy is identical in all material respects.

age for "loss ... caused by, resulting from, contributed to, or aggravated by ... flood."

▮ Third party negligence is not a covered risk which creates inconsistency or ambiguity between the language of coverage and the language of exclusion. Although loss from third party negligence is covered under an "all risk" policy, that coverage is expressly subject to the language of the exclusions included in the policy. Under the policy language here, the insureds' loss which is caused by, resulting from, contributed to or aggravated by a flood is excluded regardless of the existence of any other contributing cause. Unlike in *Koncilja,* there is no inconsistency or ambiguity in the inclusionary and exclusionary language of the insurance policies in this case.

Moreover, the "efficient moving cause" rule set forth in *Koncilja* does not control our decision in this case. We believe that the "efficient moving cause" rule, if it were to be adopted by this court, must yield to a well-settled principle of law: namely, that courts will not rewrite a contract for the parties. *See, e.g., Republic Ins. Co. v. Jernigan,* 753 P.2d 229, 232 (Colo.1988).

Both editions of Couch, *Cyclopedia of Insurance Law,* are consistent with this conclusion. In the 1930 edition, the section immediately preceding the section from which the *Koncilja* court quoted states: "The general rule as to proximate and remote cause may be changed by the insertion in the policy of qualifying or enlarging words." 6 G. Couch, *Cyclopedia of Insurance Law* § 1465 (1930); *see also Hocking v. British Am. Assurance Co.,* 62 Wash. 73, 113 P. 259 (1911) (where fire insurance policy included provision stating that the company "shall not be liable for loss caused directly or indirectly by ... order of any civil authority," the exclusion applies whether the order of the civil authority is the direct or the indirect cause of the loss).

▮ The current edition of Couch, the second edition revised, provides: "The principles of causation should not be so closely applied as to defeat the intent of the parties as manifested in the contract of insurance." 18 G. Couch, *Cyclopedia of Insurance Law* § 74:696, at 1009 (2d ed. rev. 1983). The second revised edition provides:

> In view of the wide use of limiting clauses in policies speaking in terms of a "sole" cause or similar provisions, it becomes academic to pursue the matter beyond recognizing that the contract of insurance may by its express terms "disqualify" a cause which, in the absence of such a policy provision or under principles of general tort law, would be deemed a proximate cause. Thus, it has been held that the doctrine of proximate cause has no application in ascertaining liability upon policies which contain clauses relieving the insurance company from liability where death is caused or contributed to directly or indirectly, or wholly or partially, by disease, and the evidence shows that disease contributed to the death.

18 G. Couch, *Cyclopedia of Insurance Law* § 74:705, at 1017 (2d ed. rev. 1983). Therefore, the "efficient moving cause" rule must yield to qualifying or enlarging words agreed to by the parties and included in the insurance policy.[6]

The language of the exclusion in the policies here specifically excludes loss "caused by, resulting from, *contributed to, or aggravated by* any of the following: ... flood." (Emphasis added.) We would be rewriting the policy if we were to hold that the "efficient cause ... is the cause to which the loss is to be attributed." The language of this exclusion qualifies or enlarges the phrase "caused by" with "contributed to" and "aggravated by." There is no doubt that the flood "contributed to" or "aggravated" the insureds' loss. Therefore, we decline to apply the "efficient

---

**6.** We believe the *Koncilja* court erred when it applied the "efficient moving cause" rule in a case with an exclusion worded the same as the exclusion in this case. That is, the "efficient moving cause" rule should not apply in a case where the exclusion includes qualifying and enlarging words of causation such as "contributed to" and "aggravated by." Insofar as *Koncilja* is inconsistent with our conclusion, it is overruled.

moving cause" rule where it abrogates the language to which the parties agreed.

Finally, in *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989 (2d Cir.1974), the court, in construing a similar exclusion, stated:

> Remote causes of causes are not relevant to the characterization of an insurance loss. In the context of this commercial litigation, the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings. The words "due to or resulting from" limit this inquiry to the facts immediately surrounding the loss.

*Pan American*, 505 F.2d at 1006. Here, also, we believe that the words "caused by, resulting from, contributed to, or aggravated by" limit the causation inquiry to the facts immediately surrounding the loss.

Accordingly, the judgment of the trial court is affirmed.

LOHR, J., dissents.

ERICKSON and MULLARKEY, JJ., join in the dissent.

LOHR, Justice, dissenting:

I respectfully dissent. The majority holds that the term "flood" as contained in the insurance policies is free from ambiguity and covers inundations of water caused by the breakage of a dam. The majority also overrules *Koncilja v. Trinity Universal Insurance Co.*, 35 Colo.App. 27, 528 P.2d 939 (1974), and holds that the "efficient moving cause" rule does not apply to this case because there is no inconsistency between the relevant inclusionary and exclusionary clauses of the policy. I disagree with the majority on both of these issues. In my view the term "flood" as used in the policy is ambiguous. Even assuming that the majority is correct in concluding that the term is free from ambiguity and that the inundation caused in this case is excluded from coverage, I believe that there is a conflict between the inclusionary and exclusionary clauses of the policies and that under the method of analysis set forth in *Koncilja* the type of damage

suffered by the plaintiffs is included within the coverage of the insurance policies.

## I.

In *Ferndale Development Co. v. Great American Insurance Co.*, 34 Colo.App. 258, 527 P.2d 939 (1974), the Colorado Court of Appeals correctly recognized that the term "flood" is subject to several somewhat different "plain" meanings. *Id.* at 260, 527 P.2d at 940. The court noted that courts and commentators sometimes disagree as to whether certain types of inundations fall within the meaning of the term "flood." *Id.* The court of appeals therefore held that the term "flood" was ambiguous and that an inundation of water caused by the breakage of a city water line was not excluded from coverage under the insurance policy by the provision excluding damage caused by "flood, [or] surface water" since ambiguities are to be resolved against the insurer. *Id.* at 260–61, 527 P.2d at 940.

I do not believe, as the majority does, that *Ferndale* is readily distinguishable in principle from the present case, although admittedly the facts are not the same. The court in *Ferndale* characterized the flow of water as an "inundation," and the inundation was caused by the breakage of an artificially created containment of water. Those are the facts that caused the court of appeals to hold as it did in *Ferndale*, and the inundation from the failure of the dam in the present case can fairly be characterized in a like manner.

The plaintiffs argue that "flood" should be interpreted to refer only to inundations caused by natural conditions or events. In this case, the term "flood" in the exclusionary clauses is found in the context of natural causes of flooding, i.e., "flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not." This in itself indicates that the term "flood" could be interpreted as encompassing only natural causes. *Cf. Bly v. Auto Owners Ins. Co.*, 437 So.2d 495, 496–97 (Ala.1983) (term "earth movement" in insurance policy en-

compasses only natural phenomena involving earth movement because examples mentioned in policy are only natural phenomena); *Ariston Airline & Catering Supply Co. v. Forbes,* 211 N.J.Super. 472, 511 A.2d 1278, 1284 (Law Div.1986) ("words 'earth movement,' like other language in policies being construed, must be read in the light of other words contained in the same exclusion").

Several courts have interpreted similar insurance policy provisions in just this way. *See, e.g., Robert Dorsen, Inc. v. Aetna Casualty & Sur. Co.,* 562 F.Supp. 495, 496 (D.D.C.1983). *See also* 5 J. Appleman, *Insurance Law and Practice* § 3145, at 462–63 (1970). Indeed, in the present case the district court initially interpreted the policy provisions to encompass only flooding by natural causes and not to include "a situation of an artificially-impounded or contained body of water that escapes and causes damage." *Kane v. Royal Ins. Co.,* No. 83CV603, slip op. at 2–3 (Dist. Ct. Larimer Co., Feb. 28, 1984) (Dressel, J.) (the district court later reversed this decision since it viewed as binding the Colorado Court of Appeals decision in *Bartlett v. Continental Divide Insurance Co.,* 697 P.2d 412 (Colo. App.1984)). These authorities, of course, do not compel us to take the same view, but they do provide support for a conclusion that the term "flood" as contained in insurance policies is ambiguous. *See* Annot., *Division of Opinion as Evidence that Particular Clause of Insurance Policy is Ambiguous,* 4 A.L.R. 4th 1253 (1981) (existence of differing interpretations of a term among or within jurisdictions is evidence of ambiguity of the term).

In sum, I believe the term "flood" as contained in the insurance policy is ambiguous. *See Ferndale,* 34 Colo.App. 258, 527 P.2d 939 (1974); *Mateer v. Reliance Ins. Co.,* 247 Md. 643, 233 A.2d 797 (1967) (term "flood" is latently ambiguous when used in an insurance policy). Ambiguous terms in an insurance policy are to be construed most strongly against the insurer. *Republic Ins. Co. v. Jernigan,* 753 P.2d 229, 232 (Colo.1988); *Reed v. U.S. Fidelity & Guar. Co.,* 176 Colo. 568, 572, 491 P.2d 1377, 1379 (1971). Therefore, I would hold that inundation caused by the breakage of a dam is not excluded from coverage by the flood provisions of these policies.

## II.

Even if the majority is correct in concluding that the damage caused to the petitioners' place of business is excluded from coverage by the flood provisions of the policies, the "all-risk" policies in question cover damage caused by the negligent acts of a third party or any other source not specifically excepted from coverage by the exclusionary clauses of the policies. Under a proper construction of *Koncilja v. Trinity Universal Insurance Co.,* 35 Colo.App. 27, 528 P.2d 939 (1974), I believe that the insurer should bear the loss under the policies if third-party negligence or some other nonexcluded risk caused the dam to break.

In *Koncilja,* leakage from a broken water pipe in the insured home (a peril explicitly covered by the policy) caused subsidence of ground beneath the home (a peril excluded from coverage). There was therefore an inconsistency as to coverage. To resolve this inconsistency the court of appeals adopted the view that

> [I]n determining whether a loss is within an exception in a policy, where there is a concurrency of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.

*Id.* at 30, 528 P.2d at 940–41 (quoting 6 G. Couch, *Cyclopedia of Insurance Law* § 1466 (1930)). The first cause, the leak from the water pipe, set in motion the second cause, the subsidence. Therefore the loss was covered under the policy. *Koncilja,* 35 Colo.App. at 30–31, 528 P.2d at 940–41. I believe this to be a sound rule. *See* 5 Appleman, *supra* § 3083 (1970 & 1988 Supp.). Moreover, this rule is consistent with the view of a majority of jurisdictions. *See Villella v. Public Employees Mut. Ins. Co.,* 106 Wash.2d 806, 725 P.2d 957, 962 (1986). Accordingly, I see no need to overrule the settled law of *Koncilja* as does the majority opinion. *See* maj. op. at 685 n. 6; *see also infra* note 1.

The majority apparently concedes that third party negligence, such as negligence

in the design, construction, or operation of the dam, is covered by the "all risk" policies in this case. However, the majority also concludes that there is no inconsistency because that coverage is "expressly subject to the language of the exclusions included in the policy." Maj. op. at 685. This approach has the effect of treating the events leading up to the damage of the petitioners' place of business as a single cause by implicitly saying that third party negligence is covered under the policy but not if the third party negligence causes flooding. I believe this approach misapprehends the rationale underlying *Koncilja*. There was more than one "cause" of the petitioners' damage in this case. There was third party negligence in the design, construction or operation of the Lawn Lake Dam or some other cause that resulted in failure of the dam, and there was the "flood" which was "caused" or put in motion by the precipitating cause of the breakage of the dam.

In *Hatley v. Truck Insurance Exchange*, 261 Or. 606, 494 P.2d 426 (1972), vandals caused flooding of the plaintiffs' place of business. Vandalism was covered by the policy but loss resulting from "flood," "surface water" or "water below the surface of the ground" was excluded from coverage. The Oregon Supreme Court did not hold, as the majority in this case apparently would, that the vandalism that caused flooding was not covered by the policy. Rather, the court, using an analysis very similar to that in *Koncilja*, determined that there were two causes of the plaintiffs' damage and that the policy covered this

damage since the vandalism "cause" was the direct or immediate cause of the water damage. *Id.* 494 P.2d at 431–32. *Accord Beauty Supplies, Inc. v. Hanover Ins. Co.*, 526 S.W.2d 75 (Mo.Ct.App.1975); *Franklin Packaging Co. v. California Union Ins. Co.*, 171 N.J.Super. 188, 408 A.2d 448 (App. Div.1979).

I believe that this is also the proper method of analysis under *Koncilja*. Third party negligence or some other source resulting in breakage of the dam was one cause of the damage to the petitioners' place of business and the "flooding" was another cause. However, because the precipitating cause of the failure of the dam set in motion the flooding, the policy should be construed in favor of coverage, if the precipitating cause is not itself excluded from coverage. *See Koncilja*, 35 Colo. App. at 30–31, 528 P.2d at 940–41.[1]

Moreover, this analysis is consistent with the rule applied in the majority of jurisdictions when both a covered risk and an excluded risk contribute to the claimed loss. *See Villella v. Public Employees Mut. Ins. Co.*, 106 Wash.2d 806, 725 P.2d 957, 962 (1986). "[W]here an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery." *Id.* (citing 5 J. Appleman, *Insurance Law and Practice* § 3083, at 311 (1970); 18 R. Anderson, *Couch on Insurance* § 74:711, at 1020–22 (2d rev. ed. 1983)). In *Villella*, the Washington Supreme Court held that a homeowner's policy provision excluding coverage for "any loss caused by, resulting from, contributed

---

**1.** The majority overrules *Koncilja*, concluding that the "'efficient moving cause' rule should not apply in a case where the exclusion includes qualifying and enlarging words of causation." Maj. op. at 685 n. 6. However, this conclusion overlooks the fact that the efficient moving cause or proximate cause rules have been applied regularly even when qualifying and enlarging words of causation are present. *See, e.g., Villella*, 106 Wash.2d 806, 725 P.2d 957 (1986) ("caused by, resulting from, contributed to or aggravated by"); *Ariston*, 211 N.J.Super. 472, 511 A.2d 1278 (Law Div.1986) ("caused by, resulting from, contributed to or aggravated by"); *Stone v. Royal Ins. Co.*, 211 N.J.Super. 246, 511 A.2d 717 (App.Div.1986) ("directly or indirectly" caused by excluded risk). Moreover, at

least one court has held that exclusionary clause language designed specifically to avoid application of a proximate cause analysis will not preclude such an analysis since the inquiry is based in part on public policy concerns over attempts to exclude losses connected with certain perils regardless of the importance of these perils in causing the loss. *Safeco Ins. Co. v. Hirschmann*, 52 Wash.App. 469, 760 P.2d 969 (1988) (clause excluding listed perils "whether occurring alone or in any sequence with a covered peril" held not to preclude proximate cause inquiry). Thus, the majority's conclusion that *Koncilja* was wrongly decided based on the policy language at issue is not well supported by the case law.

to or aggravated by ... earthquake, landslide, mudflow, earth sinking, rising or shifting" would not preclude coverage for damage to a house caused by the negligent work of a building contractor which resulted in improper drainage and soil shifting. *Villella*, 725 P.2d at 958–59, 964. If the alleged proximate cause of the loss was the negligently constructed drainage system, the "earth movement exclusionary clause would *not* exclude coverage." *Id.* at 964 (emphasis in original). *See also Ariston Airline & Catering Supply Co. v. Forbes*, 211 N.J.Super. 472, 511 A.2d 1278 (Law Div.1986) (efficient proximate cause rule applies to provide coverage for damage to warehouse from frost heaves despite "earth movement" exclusion if efficient cause was design or construction defect); *Safeco Ins. Co. v. Hirschmann*, 52 Wash. App. 469, 760 P.2d 969 (1988) ("all-risk" homeowners policy provides coverage for landslide damage despite "earth movement" exclusion where the proximate cause of loss was wind and rain).

For the reasons set forth above, I would reverse the order of the district court granting summary judgment and would remand the case for further proceedings.

ERICKSON and MULLARKEY, JJ., join in this dissent.